## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

JACKSONVILLE BRANCH OF THE
NAACP; NORTHSIDE COALITION
OF JACKSONVILLE, INC.; ACLU OF
FLORIDA NORTHEAST CHAPTER;
FLORIDA RISING TOGETHER, INC.;
MARCELLA WASHINGTON;
INGRID MONTGOMERY; AYESHA
FRANKLIN; TIFFANIE ROBERTS;
ROSEMARY McCOY; SHELIA
SINGLETON; EUNICE BARNUM;
JANINE WILLIAMS; HARAKA
CARSWELL; and DENNIS BARNUM

      Plaintiffs,                Case No.:  3:22-cv-493-MMH-LLL

v.

CITY OF JACKSONVILLE and
MIKE HOGAN, in his official capacity
as Duval County Supervisor of Elections,

      Defendants.

_____/

## DECLARATION OF DANNY BECTON

1.      My name is Danny Becton and I submit this declaration pursuant to

28 U.S.C. §1746.    I am over the age of 18 and fully competent to make this

declaration.

2.      I am a member of the Jacksonville City Council representing District

11. I was initially elected Councilmember by the constituents of District 11 in 2015

and re-elected in 2019.

1

3.      I am a member of the Republican Party.

4.      I first became involved in redistricting as a citizen following the 2010 census because I believed that the Southside should have its own council district separate from the Beaches. This resulted in the creation of a relocated District 11 to the east side of the river which also resulted in more compact districts throughout Jacksonville overall.

5.      For the 2021-2022 redistricting, I was the Vice Chair of the Special Committee on Redistricting appointed on July 2, 2021 by Council President Newby ("Committee").  The Committee was responsible for, among other things: (1) recommending a person qualified to serve as the Redistricting Consultant,  (2) determining what rules must be followed in developing legally defensible districts, (3) developing guidelines for the redistricting process based off of legal considerations, and (4) submitting a final proposed redistricting plan to City Council within 150 days after the U.S. Bureau of the Census certification of the final population count for the City of Jacksonville.

6.      The Committee held two meetings in August 2021 where the members discussed: (1) the City of Jacksonville Planning and Development Department (the "Department"), and Mr. Killingsworth's, role in the redistricting process; (2) criteria that the Department should take into account when revising the City Council district boundaries.

7.      At its first meeting on August 18, 2021, the Committee unanimously voted to make Mr. Killingsworth, the Director of the City of Jacksonville Planning and Development Department (the "Department"), the Committee's redistricting consultant.

8.      The Committee also unanimously agreed that the Department should start the redistricting process based upon the current district boundaries rather than start the redistricting process from scratch. I agreed with this recommendation because it allowed the Council to make the 2011 lines more perfect.

9.      Mr. Killingsworth advised that had it not been for District 11's growth of approximately 17,000 people, the Council lines may not have needed to change at all.

10.      I voted to start from the 2011 existing District boundaries for several reasons. First, the Department had started from scratch in 2010 and created new district boundaries; these new lines might only need minimal changes, especially north and west of the St. Johns River. Also, only one of the 14 City Council Districts – District 11 – had substantial growth which needed to be accounted for in the 2022 redistricting process, so it seemed natural to start from that district and see "where the dominoes fell" as we incorporated the population changes. In addition,

starting with the previous lines would help protect incumbents from being drawn out of their current districts.

11.     At the August 24, 2021, Committee meeting, the Committee provided Mr. Killingsworth several additional considerations to take into account during the redistricting process.

12.     On August 24, the Committee unanimously agreed upon the following criteria relating to the redistricting process: (1) continue using total population numbers - instead of voting age population - to comply with the one person/one vote standard; (2) not draw incumbents outside of their current districts; (3) minimize river crossings, but recognizing that it may not be possible to eliminate all river crossings; and (4) not expediting the redistricting process, but rather adhering to the normal redistricting timeline.

13.     Additional criteria, such as compact contiguous districts and considering communities of interest, were also discussed.

14.     However, Paige Johnston, from the Office of General Counsel advised that these criteria – as well as others – were already contained in Section 18.01 of the City's Ordinance Code.

15.     Ms. Johnston advised that a motion to provide these criteria to the Department was not necessary because it would have to follow these guidelines when redistricting the City Council district lines.

4

16.     These considerations established the baseline and starting point for that the Department to work from in generating new District lines.

17.     In addition to the Committee's unanimously agreed upon guidelines stated above, other factors were taken into consideration by individual City Council members as it related to redistricting of their specific Districts.

18.     Prior to the 2022 redistricting process, District 11 spanned the southeasternmost portion of Duval County.  The primary change that occurred to District 11 was to its northern and southwestern boundary.  A true and correct copy of the 2011 and 2022 boundaries of District 11 are attached hereto as Exhibit A.

19.     According to the 2020 decennial census, District 11's total population was 90,767 people.   District 11 had the largest population growth in the County.

20.     Mr. Killingsworth, the Director of the Planning and Development Department for the City of Jacksonville and City consultant for the redistricting process, advised that in order to comply with the one person/one vote standard required by the United States Constitution, each of the 14 City Council Districts needed to have an approximate total population of 71,000.

21.     According to the 2020 census numbers, District 11 needed to lose substantial population to meet the acceptable population deviation.

22.     Starting from the existing City Council district boundaries to equalize the population was the most important factor leading to my advocacy for District 11's new boundaries.

23.     As a result of the redistricting, District 11 lost 17,304 people, primarily along the northern and southwestern borders.

24.     I understand "communities of interest" to encompass numerous and various descriptors, including the criteria stated in the Ordinance Code – the varied economic, social and ethnic interests and objectives of the citizens of Jacksonville – as well as people with similar political affiliation, people who share similar political concerns, shared racial or ethnic backgrounds, communities with a common history, cultural communities, economic communities, and types of housing.  For instance, when I participated in the 2011 redistricting as a citizen, I did so because the Beaches were a vastly different community of interest than the Southside, where I resided. The citizens in each of these communities had vastly different collective concerns, and each group deserved its own representative on the City Council.

25.     I never used the term "communities of interest" to solely mean "race," and I do not think the phrase has such a narrow definition.

26.     At no point during the redistricting process did I aim to set a specific racial target population for District 11 or any other City Council District.

27.     Based on my recollections of the redistricting process, race was only rarely discussed, and in no way was the core factor that influenced the Council's redistricting decisions.

28.     At the December 6, 2021 meeting I did state I was concerned that the inclusion of narrow racial categories on the proposed maps made it inadvertently appear that the Committee was considering race.

29.     Mr. Killingsworth explained that the data included on the table with the map was taken directly from the census information.

30.     According to Mr. Killingsworth, the census data comes with numerous categories of data. Because of the size of the census data set, it was impossible to include the entire table with all its various categories on the map.

31.     Because of the amount of the census data, the Department made the decision to include only the information relating to those people who identified as a single race, rather than the multiple other categories included by the census. The Department did not initially include the information relating to persons who identified as multiple races, but could include such information in the legislation as an attachment to the map.

32.     Mr. Killingsworth's explanation made sense and I supported the inclusion of the additional census data with the proposed maps.

33.     After receiving Mr. Killingsworth's explanation, I was not concerned that race was the factor driving the Council's redistricting decisions.

34.     When I voted in favor of Ordinance 2022-01-E and the District lines contained therein, I did not do so in any way because of racial concerns.

35.     I voted in favor of Ordinance 2022-01-E because I believed that the District lines contained therein are constitutional and that the maps achieved the objectives of the committee. We accounted for population growth and met the ten percent deviation requirements. In addition, we did our best to minimize river crossings, which was one of my priorities. Another priority was maintaining the continuity of the existing districts, which was also satisfied by this Ordinance. I believed that the Committee had done a thorough job as evidenced by several meetings with Councilmembers and citizens of the affected districts as well as the public at large.

I declare and state under penalty of perjury, that the foregoing is true and correct.

Executed this _9th_ day of August, 2022, in Duval County, Florida.

DANNY BECTON

# EXHIBIT A

# CITY COUNCIL DISTRICT 11

**5**

**4**

**3**

**13**

**5**

**11**

NORTH

JPDD
GIS

0   1,250  2,500     5,000     7,500     10,000
Feet

Developed by Howard Seltzer hseltzer@coj.net
2020 Districts based on 2020 US Census data
July 27, 2022
Content intended for illustrative purposes only

☐ EXISTING CD BOUNDARIES

■ CITY COUNCIL DISTRICT 11