UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JACKSONVILLE BRANCH OF THE
NAACP; NORTHSIDE COALITION
OF JACKSONVILLE, INC.; ACLU OF
FLORIDA NORTHEAST CHAPTER;
FLORIDA RISING TOGETHER, INC.;
MARCELLA WASHINGTON;
INGRID MONTGOMERY; AYESHA
FRANKLIN; TIFFANIE ROBERTS;
ROSEMARY McCOY; SHELIA
SINGLETON; EUNICE BARNUM;
JANINE WILLIAMS; HARAKA
CARSWELL; and DENNIS BARNUM

     Plaintiffs,                      Case No.: 3:22-cv-493-MMH-LLL

v.

CITY OF JACKSONVILLE and
MIKE HOGAN, in his official capacity
as Duval County Supervisor of Elections,

     Defendants.
_____/

## DECLARATION OF AARON BOWMAN

1. My name is Aaron Bowman and I submit this declaration pursuant to 28 U.S.C. §1746. I am over the age of 18 and fully competent to make this declaration.

2. I am a member of the Jacksonville City Council representing District 3. I was initially elected Councilmember by the constituents of District 3 in 2015 and re-elected in 2019.

3. I am a member of the Republican Party.

4. I was the Chair of the Special Committee on Redistricting appointed on July 2, 2021 by Council President Newby ("Committee"). The Committee was responsible for, among other things: (1) recommending a person qualified to serve as the Redistricting Consultant, (2) determining what rules must be followed in developing legally defensible districts, (3) developing guidelines for the redistricting process based off of legal considerations, and (4) submitting a final proposed redistricting plan to City Council within 150 days after the U.S. Bureau of the Census certification of the final population count for the City of Jacksonville.

5. The Committee held two meetings in August 2021 where the members discussed: (1) the City of Jacksonville Planning and Development Department (the "Department"), and Mr. Killingsworth's, role in the redistricting process; (2) criteria that the Department should take into account when revising the City Council district boundaries.

6. At its first meeting on August 18, 2021, the Committee unanimously voted to make Mr. Killingsworth, the Director of the City of Jacksonville Planning and Development Department (the "Department"), the Committee's redistricting consultant.

7. I had reached out to Mr. Killingsworth prior to the August meetings because of his knowledge about the City's growth and permitting as well as his

experience with the previous redistricting process. He recommended that the Department should start the redistricting process based upon the current district boundaries rather than start the redistricting process from scratch. At the August 18, 2021 meeting, the Committee unanimously agreed to follow this recommendation.

8. Mr. Killingsworth advised that had it not been for District 11's growth of approximately 17,000 people, the Council lines may not have needed to change at all.

9. I voted to start from the 2011 existing District boundaries because: (1) the Department had started from scratch in 2010 and created new district boundaries; (2) only one of the 14 City Council Districts – District 11 – had substantial growth which needed to be accounted for in the 2022 redistricting process; and (3) it would help protect incumbents from being drawn out of their current districts. I was also concerned about minimizing the impact of redistricting on School Board Districts, which are based on the City Council District boundaries.

10. Starting the redistricting process from the existing District boundaries was the first, and in my mind, most important factor provided to the Department for the redistricting process.

11. At the August 24, 2021, Committee meeting, the Committee provided Mr. Killingsworth several additional considerations to take into account during the redistricting process.

12. On August 24, 2021 the Committee unanimously agreed to follow several criteria relating to the redistricting process. First, the Committee agreed to continue using total population numbers - instead of voting age population - to comply with the one person/one vote standard. This would take into account people who were not yet old enough to vote but would "age-in" to voting before the next redistricting in ten years. Second, the Committee wanted to avoid drawing incumbents outside of their current districts, to provide continuity to their constituents as well as to protect people who had filed to run in at-large Districts. In addition, the Committee wanted to minimize river crossings to the extent possible, recognizing that it may not be possible to eliminate all river crossings. Finally, rather than expediting the redistricting process, the Committee chose to adhere to the normal redistricting timeline.

13. Additional criteria such as compact, contiguous districts, and considering communities of interest were also discussed.

14. However, Paige Johnston, from the Office of General Counsel advised that these criteria – as well as others – were already contained in the Ordinance

Code and that the Department would have to follow those guidelines when redistricting the City Council district lines.

15. A copy of the relevant Code provision that was discussed is attached as Exhibit A. (Sec. 18.01).

16. Ms. Johnston advised that a motion to provide these criteria to the Department was not necessary.

17. These considerations established the baseline and starting point for that the Department to work from in generating new District lines.

18. In addition to the Committee's unanimously agreed upon guidelines stated above, other factors were taken into consideration by individual City Council members as it related to redistricting of their specific Districts.

19. One factor that arose during the redistricting process was wanting public facilities, like libraries or schools, within the geographic boundaries.

20. A second was the political affiliation of the constituents in the areas that were being shifted into or out of a District.

21. The first maps presented with regard to the southern districts attempted to eliminate District 2's river crossing, but this would cause too many drastic changes in several district.

22. It was agreed that eliminating crossing the St. Johns River was causing too many problems with part of the southern districts and defeating the other Committee goals.

23. Councilmember Becton reminded the councilmembers that the goal was to minimize river crossings, not necessarily eliminate them.

24. Mr. Killingsworth was given direction to permit District 2 to cross the river and provide updated District boundary options.

25. Prior to the 2022 redistricting process, District 3 was based in the area south of the St. Johns River, north of J. Turner Butler Boulevard, and immediately west of the Intracoastal Waterway. The primary change that occurred to District 3 was to its eastern and western boundaries. A true and correct copy of the 2011 and 2022 boundaries of District 3 are attached hereto as Exhibit B.

26. According to the 2020 decennial census, District 3's total population was 72,561 people.

27. Mr. Killingsworth, the Director of the Planning and Development Department for the City of Jacksonville and City consultant for the redistricting process, advised that in order to comply with the one person/one vote standard required by the United States Constitution, each of the 14 City Council Districts needed to have an approximate total population of 71,000.

28. According to the 2020 census numbers, District 3 did not need to gain or lose any population to meet the acceptable population deviation. However, because of the population growth of District 11, it was likely that District 3's borders would be revised.

29. Minimizing changes to the existing boundaries and maintaining communities of interest were the most important factors leading to my advocacy for District 3's new boundaries.

30. One of the areas added to District 3 was the Town Center area, with several apartment complexes that fit in with the existing community of interest surrounding the University of North Florida.

31. As a result of the redistricting, District 3 gained 1,841 people, primarily along the western border.

32. The term "communities of interest" includes numerous factors, including location near and access to major roads, business areas, and natural resources. It takes into account factors such as lot size, single-family vs. multifamily housing, and zoning. Certain areas naturally attract people with particular interests, such as having more boaters in District 2, horse owners in the more rural Westside districts, and beachgoers in District 13. The term also encompasses the categories of "economic, social, and ethnic interest and objectives" noted in the Jacksonville Ordinance Code.

33. I never used the term "communities of interest" as a euphemism solely for race, nor do I understand the term to be defined so narrowly.

34. At no point during the redistricting process did I aim to set a specific racial target population for District 3 or any other City Council District.

35. My understanding is that the racial balance of some Districts was discussed during the redistricting process out of a concern to neither pack nor dilute the votes of minority citizens. However, my understanding is that these concerns represented only some of many considerations that influenced the Council's redistricting decisions, and did not predominate over all others.

36. I voted in favor of Ordinance 2022-01-E because I believed that the District lines contained therein comport are constitutional and solved all of the issues faced by the Committee. It produced fair districts keeping in mind the similar interests of those in the communities in the districts. The committee met the timelines, completing the work in three and a half months (since we started with the existing lines). The population guidelines were met. Citizens provided input at the well-publicized meetings (even though those meetings were poorly attended). The district lines reflected the consensus of the Council and met the legal requirements and the charge of the committee.

37. My vote in favor of Ordinance 2022-01-E and the District lines contained therein was not predominately driven by race.

38. A copy of the City Council district lines approved in Ordinance 2022-01-E is attached as Exhibit C.

I declare and state under penalty of perjury, that the foregoing is true and correct.

Executed this 9 day of August, 2022, in Duval County, Florida.

AARON BOWMAN

# EXHIBIT A

# Chapter 18 REDISTRICTING OF COUNCIL AND SCHOOL BOARD DISTRICTS[1]

### Sec. 18.101. Legislative findings.

The Council finds and determines as follows:

(a) Charter Sections 5.02 and 13.03 impose upon the Council the duty and responsibility of redistricting the Council districts and the School Board districts;

(b) In making this redistricting, the Council is obligated to insure that all districts are as nearly equal in population and are arranged in as logical and compact a geographical pattern as it is possible to achieve and to insure that all federal and state constitutions, laws and requirements are complied with;

(c) While the Council districts are based upon population with respect to their size, the geographical arrangement and territorial boundaries of the districts must take into consideration other factors, particularly compactness and contiguity, so that the people of the City, and their varied economic, social and ethnic interests and objectives, are adequately represented in the Council; and

(d) This chapter is enacted in order to set forth legislative policy, to provide for appropriate public input, and to provide for an adequate review of the redistricting plan before it is enacted into law.

(Ord. 81-827-390, § 1; Ord. 83-591-400, § 1; Ord. 90-765-354, § 1; Ord. 2012-74-E, § 1)

Editor's note(s)—A reference in this Section to § 11.03 of the Charter has been changed to reflect the correct Section, § 13.03.

Note(s)—Former § 4.101.

### Sec. 18.102. Definitions.

In this chapter, unless the context indicates otherwise:

(a) *Census* means the official decennial census master enumeration district list published by the Bureau of the Census and containing the population figures for the City.

(b) *Department* means the Planning and Development Department.

(c) *Director* means the Director of Planning and Development.

(d) District means one of the 14 Council districts into which the General Services District is required to be divided by Section 5.01 of the Charter.

(e) Plan means a plan or scheme for the redistricting of Council districts, which shall also be a redistricting of School Board districts by operation of Section 13.03 of the Charter.

---

[1]Editor's note(s)—Ord. 2012-74-E, § 1, amended the title of Ch. 18. Formerly, Ch. 18 was entitled "Reapportionment of Council and School Board Districts."

Charter reference(s)—Reapportionment of council districts, § 5.02; school board districts, § 13.02; apportionment of school board districts, § 13.03.

Jacksonville, Florida, Code of Ordinances                    Created: 2022-06-08 13:36:17 [EST]
(Supp. No. 56)

Page 1 of 5

    (f)    Redistricting Committee means the committee of the Council appointed by the President to study redistricting and draft a redistricting plan; such committee may be a special committee or a standing committee designated as the Redistricting Committee; such committee's duties will terminate with the submission of a proposed plan to the Council.

    (g)    Redistricting Consultant or Consultant means the Department or a person, partnership, corporation or entity requested or hired by the Council to assist the Council in drafting a redistricting plan.

(Ord. 81-827-390, § 1; Ord. 83-591-400, § 1; Ord. 90-765-354, § 2; Ord. 2012-74-E, § 1)

Note(s)—Former § 4.102.

### Sec. 18.103. Reserved.

Editor's note(s)—The provisions of former § 18.103, relative to time for reapportionment, were deleted as part of the Super Supplement to the Code. Former § 18.103 derived from Ord. 81-827-390, § 1; and Ord. 83-591-400, § 1.

Note(s)—Former § 4.103.

### Sec. 18.104. Preparation of plan.

Whenever the Council President deems appropriate, but no more than six months after the official date for the taking of the decennial census, the President shall appoint a special committee or designate a standing committee to serve as a Redistricting Committee. The Redistricting Committee shall investigate possible persons or entities, including the Planning Department, qualified to serve as a Redistricting Consultant. If it deems appropriate, the Redistricting Committee shall send out a request for proposals. After it has completed its investigation, the Redistricting Consultant shall present to the Council the names of the persons or entities recommended to be chosen as the Redistricting Consultant. Such selection shall be based on professional qualifications and experience in redistricting. Unless the Department is chosen, the hiring of a Redistricting Consultant shall follow the Purchasing Code, except that the final choice of the Redistricting Consultant shall be made by the Council. In addition, the Redistricting Committee shall adopt a schedule for preparation of a plan to be submitted to the Council. Within 150 days after U.S. Bureau of the Census certification of the final population count for the City, the Redistricting Committee will submit to the Council a final proposed plan pursuant to Section 18.106. The Redistricting Committee shall have available all alternative plans considered but not recommended. If the Department is not requested to be the Redistricting Consultant, the Department shall advise the Council and the Redistricting Committee with regard to any matter the Council deems advisable.

(Ord. 81-827-390, § 1; Ord. 83-591-400, § 1; Ord. 90-765-354, § 3; Ord. 91-759-252, § 1; Ord. 2012-74-E, § 1)

Note(s)—Former § 4.104.

### Sec. 18.105. Reserved.

Editor's note(s)—Former § 18.105 which pertained to guidelines and derived from § 1 of Ord. 81-827-390 and § 1 of Ord. 83-591-400, was repealed by § 4 of Ord. 90-765-354.

### Sec. 18.106. Transmission of plan to Council; report.

Not later than 150 days after the census is published, the Redistricting Committee shall transmit to the Council the proposed plan. The plan shall be in the form of an ordinance, introduced by the Redistricting

Committee, amending Appendix 1 of the Charter to substitute for the then-existing district boundaries, the proposed district boundaries. The plan shall be accompanied by a report containing the following information:

(a) A map of the General Services District showing both the existing district boundaries and the proposed district boundaries;

(b) A table indicating the population of each proposed district and the variations of each such population from the population average for all the districts, with an explanation of the variation in each district;

(c) A statement of the methodology used in arriving at the particular plan recommended by the Redistricting Committee;

(d) An appendix of any other redistricting plans considered or created by the Redistricting Committee in the process of creating the recommended plan, with the reasons for rejection of each such redistricting plan; and

(e) Comments and recommendations deemed necessary or advisable by the Redistricting Committee to explain or illustrate the plan.

(Ord. 81-827-390, § 1; Ord. 83-591-400, § 1; Ord. 90-765-354, § 4; Ord. 91-759-252, § 2; Ord. 2012-74-E, § 1)

Note(s)—Former § 4.106.

### Sec. 18.107. Reference to Rules Committee; public hearings; report.

(a) As soon as the plan is received by the Council Secretary, it shall be referred to the Rules Committee. The ordinance amending the Charter shall be introduced at the next regular Council meeting following its reception by the Council Secretary, but the Rules Committee may begin consideration of the ordinance as soon as it is referred. It shall not be in order at any time to move for the enactment of the ordinance as an emergency measure. It shall not be in order to move for withdrawal of the ordinance from the Rules Committee, less than 60 days after the ordinance has been referred to the Rules Committee. The ordinance shall be a priority item of business of the Rules Committee, and the Rules Committee shall consider and report the ordinance with all deliberate speed. The Redistricting Consultant shall provide all necessary information and support to the Rules Committee, and the Director shall advise the Rules Committee during its deliberations or provide it with knowledgeable staff personnel.

(b) The Rules Committee shall hold not less than three public hearings, at three separate places in the City, on the ordinance and the plan. The public hearings shall be advertised and held in accordance with the Council rules, and they shall be held after five p.m. and on any day except Sunday. Copies of the ordinance, the plan and the report of the Redistricting Consultant shall be made available to the public upon request and shall be available at the places where the public hearings are held. Written comments or views submitted by members of the public shall be made a part of the official record of the proceedings. The Rules Committee shall consider the testimony heard and evidence received at the public hearings, but it shall not be bound by them nor confined in its deliberations to them. These public hearings shall be completed not later than 45 days after the ordinance is referred to the Rules Committee.

(c) As soon as practicable, but not less than 15 days, after the public hearings have been completed, the Rules Committee shall report the ordinance to the Council. If the Council adopts amendments to the ordinance which substantially change the boundary lines of the proposed districts, the ordinance shall be recommitted to the Rules Committee and it shall hold additional public hearings to receive the comments and views of those persons who are or would be affected by the amendments. All such additional public hearings shall be completed not later than 75 days after the ordinance was originally referred to the Rules Committee, and the Rules Committee shall report the ordinance as amended as soon as practicable after the additional public hearings are completed.

(Ord. 81-827-390, § 1; Ord. 83-591-400, § 1; Ord. 90-765-354, § 4; Ord. 2012-74-E, § 1)

Note(s)—Former § 4.107.

### Sec. 18.108. Enactment of ordinance; effective date of redistricted districts.

The ordinance amending Appendix 1 of the Charter shall be enacted by the Council according to its rules, except as provided in Section 18.107. The ordinance shall become effective at the time therein stated, but the redistricted districts shall not become effective for the purpose of electing members of the Council until the next general Consolidated Government election which occurs at least nine months after the enactment of the ordinance.

(Ord. 81-827-390, § 1; Ord. 83-591-400, § 1; Ord. 90-765-354, § 4; Ord. 2012-74-E, § 1)

Note(s)—Former § 4.108.

### Sec. 18.109. Redistricting by Circuit Court.

If the Council has not enacted a plan within eight months after the official publication of the census, the Council Secretary shall certify this fact to the General Counsel. The General Counsel shall forthwith petition the Circuit Court for the Fourth Judicial Circuit to make the redistricting required by the Charter and this chapter. An order of the Circuit Court making the redistricting shall be considered the same as an ordinance amending Appendix 1 of the Charter, and shall be given the same effect under this chapter. The redistricting order shall be included in the printed Charter in the same manner as an ordinance amending Appendix 1 thereof.

(Ord. 81-827-390, § 1; Ord. 83-591-400, § 1; Ord. 2012-74-E, § 1)

Editor's note(s)—Ord. 82-490-191, § 1 permitted approval of the 1980 reapportionment plan not later than June 22, 1982, notwithstanding that this date extended beyond the period allowed by this Section.

Note(s)—Former § 4.109.

### Sec. 18.110. Effect on School Board districts.

The redistricting of the 14 Council districts shall automatically redistrict the School Board districts, as provided in Section 13.02 of the Charter. The description of the School Board districts contained in Appendix 2 of the Charter shall determine the Council districts comprising each School Board district. The Council may, by ordinance, amend Appendix 2 of the Charter, to change the Council districts comprising each School Board district, subject to the requirements of Section 13.03 of the Charter, which shall also be considered a redistricting. Any redistricting of School Board districts shall not affect any term of office in existence at the time the redistricting becomes effective, but shall be applicable at the next School Board election which occurs at least nine months after the redistricting.

(Ord. 81-827-390, § 1; Ord. 83-591-400, § 1; Ord. 90-765-354, § 4; Ord. 2012-74-E, § 1)

Note(s)—Former § 4.110.

### Sec. 18.111. Effect on appointive offices.

A change in the division of the City into districts shall not vacate or otherwise affect the office of any member of an appointed board, commission or independent agency who is serving at the time the redistricting becomes official and who was appointed by reference to a district as it existed at the time such member was appointed. A

member shall continue to represent the district in which he resided at the time of his appointment until the expiration of his term or until he resigns from the board, commission or independent agency, notwithstanding that, as a result of the redistricting, the member no longer resides in the district from which he was appointed.

(Ord. 81-827-390, § 1; Ord. 83-591-400, § 1; Ord. 2012-74-E, § 1)

Note(s)—Former § 4.111.

### Sec. 18.112. Post-enactment of Redistricting.

The Council Secretary/Director shall comply with the post-redistricting enactment requirements of F.S. § 124.02 (Notice of change of boundaries of district to be given by publication), § 124.03 (Description of district boundaries to be furnished Department of State), and § 1001.36 (District school board member residence areas), as may be amended from time to time.

(Ord. 2012-74-E, § 1)

Note(s)—Former § 4.111.

# EXHIBIT B

# CITY COUNCIL DISTRICT 3

**Legend:**
- EXISTING CD BOUNDARIES
- CITY COUNCIL DISTRICT 3

Developed by Howard Seltzer hseltzer@coj.net
2020 Districts based on 2020 US Census data
July 27, 2022
Content intended for illustrative purposes only

# EXHIBIT C

