# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

JACKSONVILLE BRANCH OF THE
NAACP; NORTHSIDE COALITION
OF JACKSONVILLE, INC.; ACLU OF
FLORIDA NORTHEAST CHAPTER;
FLORIDA RISING TOGETHER, INC.;
MARCELLA WASHINGTON;
INGRID MONTGOMERY; AYESHA
FRANKLIN; TIFFANIE ROBERTS;
ROSEMARY McCOY; SHELIA
SINGLETON; EUNICE BARNUM;
JANINE WILLIAMS; HARAKA
CARSWELL; and DENNIS BARNUM

      Plaintiffs,                Case No.:  3:22-cv-493-MMH-LLL

v.

CITY OF JACKSONVILLE and
MIKE HOGAN, in his official capacity
as Duval County Supervisor of Elections,

      Defendants.
_____/

## DECLARATION OF GARRETT DENNIS

1.     My name is Garrett Dennis and I submit this declaration pursuant to

28 U.S.C. §1746.   I am over the age of 18 and fully competent to make this

declaration.

2.     I am a member of the Jacksonville City Council representing District

9. I was and elected by the constituents of District 9 in 2015 and re-elected in 2019.

On May 23, 2022, I resigned from my position to run for the Florida State House

of Representatives.  My resignation is effective upon the earlier date that I am elected to serve the State of Florida or the date my successor is elected.

3.      I am a member of the Democratic Party.

4.      I was also a member of the Second Special Committee on Redistricting ("Committee").  The Committee was responsible for, among other things: (1) recommending a person qualified to serve as the Redistricting Consultant,  (2) determining what rules must be followed in developing legally defensible districts, (3) developing guidelines for the redistricting process based off of legal considerations, and (4) submitting a final proposed redistricting plan to City Council within 150 days after the U.S. Bureau of the Census certification of the final population count for the City of Jacksonville.

5.      At its first meeting, the Committee unanimously voted to make Mr. Killingsworth, the Director of the City of Jacksonville Planning and Development Department (the "Department"), the Committee's redistricting consultant.

6.      The Committee provided Mr. Killingsworth several considerations to take into account during the redistricting process.

7.      The unanimously agreed upon considerations included: (1) starting from the existing City Council district boundaries; (2) using total population numbers; (3) not drawing incumbents outside of their current districts; (4)

2

minimizing river crossings, to the extent possible; and (5) not expediting the redistricting process, but rather adhering to the normal redistricting timeline.

8.     Other considerations were discussed, but were not specifically included in the Committee's direction since they were already included in Section 18.101 of the Ordinance Code, which the Department was required to follow.

9.     These considerations established the baseline and starting point for the Department to work from in generating new District lines.

10.     In addition to the Committee's unanimously agreed upon guidelines stated above, other factors were taken into consideration by individual City Council members as it related to redistricting of their specific Districts.

11.     The factor that I was advocated for was starting from the existing District boundaries rather than to start drawing the district lines from scratch.

12.     This was important to me because City Council had started from scratch in the 2010 redistricting process, in part because the location of the County's population growth had dramatically shifted over the prior ten years. The 2020 census data, however, showed only one District – District 11 – gaining a large number of constituents that needed to be accounted for in the 2022 redistricting process.

13.     I believe the most important factor to the Committee as a whole was starting the redistricting process from the existing District boundaries.

3

14. This was the first consideration the Committee voted on and unanimously approved.

15. Starting from the existing City Council district boundaries to equalize the population was the most important factors leading to District 9's boundary.

16. During the 2022 redistricting process, the only change that occurred to District 9 was along the southeast border. A true and correct copy of the 2011 and 2022 boundaries of District 9 are attached hereto as **Exhibit A**.

17. According to the 2020 decennial census, District 9's total population was 67,706 people.

18. Mr. Killingsworth, the Director of the Planning and Development Department for the City of Jacksonville and City consultant for the redistricting process, advised that in order to comply with the one person/one vote standard required by the United States Constitution, each of the 14 City Council Districts needed to have an approximate total population of 71,000, and that the population deviation must be within a 10% range measured from the District with the largest population to the District with the smallest population.

19. According to the 2020 census numbers, District 9 did not need to gain or lose any population to meet the acceptable population deviation.

20. Because the Committee unanimously agreed to start the redistricting process based off of the prior district boundaries, my primary concern for District

4

24.     I do not recall using the phrase "communities of interest, but if I did, I did not use it as a euphemism solely for race, nor do I understand the term to be defined so narrowly.

25.     The Complaint filed by the Plaintiffs in this action alleges that District 9 has 17 split neighborhoods.  This is because the redistricting process itself was based off of the 2020 census blocks, and not with an eye to specific neighborhoods.

26.     At no point during the redistricting process did I aim to set a specific racial target population for District 9 or any other City Council District.

27.     The race of the constituents I gained was not a factor in the redistricting of the boundaries of District 9.

28.     The racial balance of some Districts was discussed during the redistricting process out of a concern to neither pack nor dilute the votes of minority citizens. However, my understanding is that these concerns represented only some of many considerations that influenced the Council's redistricting decisions, and did not predominate over all others.

29.     I voted in favor of Ordinance 2022-01-E because I believed that the District lines contained therein comport with the constitutional requirement of one person/one vote and did not otherwise violate local, state, or federal law.

30.     My vote in favor of Ordinance 2022-01-E and the District lines contained therein was not predominately driven by race.

6

I declare and state under penalty of perjury, that the foregoing is true and correct.

Executed this 9th day of August, 2022, in Duval County, Florida.

**GARRET DENNIS**

7

# EXHIBIT A

# CITY COUNCIL DISTRICT 9



8

8

8

7

9

10

12

5

12

14

NORTH

JPDD
GIS

EXISTING CD BOUNDARIES

CITY COUNCIL DISTRICT 9

0   1,050  2,100        4,200        6,300        8,400
Feet

Developed by Howard Seltzer hseltzer@coj.net
2020 Districts based on 2020 US Census data
July 27, 2022
Content intended for illustrative purposes only