# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

JACKSONVILLE BRANCH OF THE
NAACP; NORTHSIDE COALITION
OF JACKSONVILLE, INC.; ACLU OF
FLORIDA NORTHEAST CHAPTER;
FLORIDA RISING TOGETHER, INC.;
MARCELLA WASHINGTON;
INGRID MONTGOMERY; AYESHA
FRANKLIN; TIFFANIE ROBERTS;
ROSEMARY McCOY; SHELIA
SINGLETON; EUNICE BARNUM;
JANINE WILLIAMS; HARAKA
CARSWELL; and DENNIS BARNUM

    Plaintiffs,

Case No.: 3:22-cv-493-MMH-LLL

v.

CITY OF JACKSONVILLE and
MIKE HOGAN, in his official capacity
as Duval County Supervisor of Elections,

    Defendants.

_____/

## DECLARATION OF BRENDA ALEXIS PRIESTLY JACKSON

1. My name is Brenda Alexis Priestly Jackson and I submit this declaration pursuant to 28 U.S.C. §1746. I am over the age of 18 and fully competent to make this declaration.

2. I am a member of the Jacksonville City Council representing District 10. I was elected by the constituents of District 10 in 2019.

3. I am a member of the Democratic Party.

4. I was also a member of the Special Committee on Redistricting appointed on July 2, 2021 by Council President Newby ("Committee") ("Committee"). The Committee was responsible for, among other things: (1) recommending a person qualified to serve as the Redistricting Consultant, (2) determining what rules must be followed in developing legally defensible districts, (3) developing guidelines for the redistricting process based off of legal considerations, and (4) submitting a final proposed redistricting plan to City Council within 150 days after the U.S. Bureau of the Census certification of the final population count for the City of Jacksonville. I also served on the predecessor Redistricting Committee, which met prior to, and in anticipation of the Census Bureau's release of census numbers to states and municipalities on August 12, 2021.

5. At the Committee's first meeting, the Committee unanimously voted to make Mr. Killingsworth, the Director of the City of Jacksonville Planning and Development Department (the "Department"), the Committee's redistricting consultant.

6. The Committee provided Mr. Killingsworth several considerations to take into account during the redistricting process.

7. The unanimously agreed upon considerations included: (1) starting from the existing City Council district boundaries; (2) continue using total population numbers to determine compliance with the one person/one vote standard; (3) not drawing incumbents outside of their current districts; (4) minimizing river crossings, to the extent possible; and (5) not expediting the redistricting process, but rather adhering to the normal redistricting timeline.

8. Other considerations were discussed, but were not specifically included in the Committee's direction since they were already included in Section 18.101 of the Ordinance Code, which the Department was required to follow.

9. These considerations established the baseline and starting point for the Department to work from in generating new District lines.

10. In addition to the Committee's unanimously agreed upon guidelines stated above, other factors were taken into consideration by individual City Council members as it related to redistricting of their specific Districts.

11. The two factors that I expressed the most concern over were: (1) not accelerating the redistricting process so that the new districts would apply for the 2022 School Board election and (2) protecting incumbent School Board and City Council members.

12. My understand regarding incumbency was that it was a major consideration for any new district boundaries and that an incumbent could not be drawn out of their district.

13. Incumbency was an important factor to me, even though at that time I was not running for re-election in District 10.

14. I am also a former School Board member, so considering the residency of incumbent School Board members was an important consideration to me. I specifically advocated that the Committee vote to include incumbency of both Council Members and School Board Members as a core factor to the redistricting process, on which it voted in the affirmative at its August 24, 2021 meeting.

15. Connected with my concern regarding protecting incumbents was my desire not to accelerate the redistricting process.

16. Dr. Coker, a member of the Duval County School Board, advised the Committee that the three School Board members whose terms were set to expire in 2022 could nonetheless run for re-election. In order to ensure that those individuals could run for re-election, I was committed to drawing lines that would protect their incumbency status.

17. In addition, I thought acceleration of the process could raise questions about the transparency and fairness of the redistricting process.

18.     I believe the most important factor to the Committee as a whole was starting the redistricting process from the existing District boundaries rather than starting the process from scratch.

19.     I voted to start from the 2011 existing District boundaries because: (1) the Department had started from scratch in 2010 and created new district boundaries; (2) to the best of my recollection, I had not received any complaints from the constituents of District 10 regarding the 2011 district boundaries; (3) District 11 was the only district with substantial growth that needed to be accounted for in 2022; and (4) it would help protect incumbent City Council and School Board members from being drawn out of their current Districts.

20.     Starting from the existing City Council district boundaries to equalize the population was the most important factor leading to my advocacy for District 10's new boundaries.

21.     During the 2022 redistricting process, the only change that occurred to District 10 was along the southwest border. A true and correct copy of the 2011 and 2022 boundaries of District 10 are attached hereto as **Exhibit A**.

22.     According to the 2020 decennial census, District 10's total population was 67,567 people.

23.     Mr. Killingsworth advised that in order to comply with the one person/one vote standard required by the United States Constitution, each of the

14 City Council Districts needed to have an approximate total population of 71,000, and that the population deviation must be within a 10% range measured from the District with the largest population to the District with the smallest population.

24. According to the 2020 census numbers, District 10 did not need to gain or lose any population to meet the acceptable population deviation.

25. Because the Committee unanimously agreed to start the redistricting process based off of the prior district boundaries, my primary concern for District 10 was to equalize the District's population so that the 10% population deviation for all Districts was met.

26. As a result of the redistricting, it was my understanding that District 10 gained 1,210 people, the majority of which resulted from the 2010 census block lines moving and natural population growth.

27. In 2022, District 10 gained a census block that had previously been placed in adjoining District 12 during the 2010 redistricting process.

28. In 2010, this census block had been placed in District 12 because the in-law's of the District 12 representative – Doyle Carter – lived in this area.

29. The prior placement of this area in District 12 caused the boundary between District 10 and 12 to be irregular in shape.

30. This area, nonetheless, shared similar characteristics to District 10, including household size, age of residents, and economic background.

31. During the 2022 redistricting process, the census block containing the area at issue was moved into District 10, which in turn made the boundary between 10 and 12 more uniform and regular.

32. I understand the term "communities of interest" to encompass numerous and various descriptors, including the criteria stated in the Ordinance Code – the varied economic, social and ethnic interests and objectives of the citizens of Jacksonville – as well as people with similar political affiliation, people who share similar concerns, shared racial or ethnic backgrounds, communities with a common history, cultural communities, economic communities, and geographical communities such as the Beaches, or pre-existing political subdivisions like Baldwin.

33. I never used the term "communities of interest" as a euphemism solely for race, nor do I understand the term to be defined so narrowly.

34. I understand the phrase "historical communities of interest" to be a subset of the broader term of "communities of interest."

35. The redistricting process was based on the 2020 census blocks, and not any specific neighborhood boundaries. Although the Complaint filed by the

7

Plaintiffs in this action alleges that District 10 has 19 split neighborhoods, these were not the basis for the process.

36. The final borders of District 10 reflect my commitment to maintain a district reflective of the one person/one vote principle and allowing voters to actualize their ability to vote for a candidate of their choice, whatever party, race or outlook.

37. At no point during the redistricting process did I aim to set a specific racial target population for District 10 or any other City Council District.

38. The race of the constituents I gained was not the predominant factor in the redistricting of the boundaries of District 10.

39. The racial balance of some Districts was discussed during the redistricting process out of a concern to neither pack nor dilute the votes of minority citizens. However, my understanding is that these concerns represented only some of many considerations that influenced the Council's redistricting decisions, and did not predominate over all others.

40. I voted in favor of Ordinance 2022-01-E because I believed that the District lines contained therein constitutional and comply with the one person/one vote standard as well as with local, state, and federal law.

41. My vote in favor of Ordinance 2022-01-E and the District lines contained therein was not predominately driven by race.

8



9

I declare and state under penalty of perjury, that the foregoing is true and correct.

Executed this 9th day of August, 2022, in Duval County, Florida.

_____
BRENDA ALEXIS PRIESTLY JACKSON

# EXHIBIT A

# CITY COUNCIL DISTRICT 10

**Legend:**
- EXISTING CD BOUNDARIES
- CITY COUNCIL DISTRICT 10

NORTH
JPDD GIS

0 1,350 2,700 5,400 8,100 10,800 Feet

Developed by Howard Seltzer hseltzer@coj.net
2020 Districts based on 2020 US Census data
July 27, 2022
Content intended for illustrative purposes only