## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

JACKSONVILLE BRANCH OF THE
NAACP; NORTHSIDE COALITION
OF JACKSONVILLE, INC.; ACLU OF
FLORIDA NORTHEAST CHAPTER;
FLORIDA RISING TOGETHER, INC.;
MARCELLA WASHINGTON;
INGRID MONTGOMERY; AYESHA
FRANKLIN; TIFFANIE ROBERTS;
ROSEMARY McCOY; SHELIA
SINGLETON; EUNICE BARNUM;
JANINE WILLIAMS; HARAKA
CARSWELL; and DENNIS BARNUM

      Plaintiffs,           Case No.:  3:22-cv-493-MMH-LLL

v.

CITY OF JACKSONVILLE and
MIKE HOGAN, in his official capacity
as Duval County Supervisor of Elections,

      Defendants.

_____/

### DECLARATION OF RANDY WHITE

    1.     My name is Randy White and I submit this declaration pursuant to 28

U.S.C. §1746.  I am over the age of 18 and fully competent to make this declaration.

    2.     I am a member of the Jacksonville City Council representing District

12. I was initially elected Councilmember by the constituents of District 12 in 2018

and re-elected in 2019.

    3.     I am a member of the Republican Party.

4.      I was a member of the Special Committee on Redistricting appointed on July 2, 2021 by Council President Newby ("Committee").  The Committee was responsible for, among other things: (1) recommending a person qualified to serve as the Redistricting Consultant,  (2) determining what rules must be followed in developing legally defensible districts, (3) developing guidelines for the redistricting process based off of legal considerations, and (4) submitting a final proposed redistricting plan to City Council within 150 days after the U.S. Bureau of the Census certification of the final population count for the City of Jacksonville.

5.      At its first meeting, the Committee unanimously voted to make Mr. Killingsworth, the Director of the City of Jacksonville Planning and Development Department (the "Department"), the Committee's redistricting consultant.

6.      The Committee provided Mr. Killingsworth several considerations to take into account during the redistricting process.

7.      The unanimously agreed upon considerations included: (1) starting from the existing City Council district boundaries; (2) continue using total population numbers to determine compliance with the one person/one vote standard; (3) not drawing incumbents outside of their current districts; (4) minimizing river crossings, to the extent possible; and (5) not expediting the redistricting process, but rather adhering to the normal redistricting timeline.

2

8.    I voted to start from the 2011 existing District boundaries because it was one of the recommendations that would make the process easier.

9.    Other considerations were discussed, but were not specifically included in the Committee's direction since they were already included in Section 18.101 of the Ordinance Code, which the Department was required to follow.

10.    These considerations established the baseline and starting point for the Department to work from in generating new District lines.

11.    In addition to the Committee's unanimously agreed upon guidelines stated above, other factors were taken into consideration by individual City Council members as it related to redistricting of their specific Districts.

12.    Keeping the quasi-municipality of Baldwin whole was one of the most important factors leading to my advocacy for District 12's new boundaries, as well as starting from existing lines and not drawing incumbent members of the Council and School Board out of their districts.

13.    Prior to the 2022 redistricting process, District 12 spanned the southwesternmost part of the City and included the town of Baldwin.   The primary changes that occurred to District 12 were to its eastern and southeastern boundaries.   A true and correct copy of the 2011 and 2022 boundaries of District 12 are attached hereto as Exhibit A.

3

14.    According to the 2020 decennial census, District 12's total population was 71,617 people.

15.    Mr. Killingsworth, the Director of the Planning and Development Department for the City of Jacksonville and City consultant for the redistricting process, advised that in order to comply with the one person/one vote standard required by the United States Constitution, each of the 14 City Council Districts needed to have an approximate total population of 71,000.

16.    According to the 2020 census numbers, District 12 did not need to gain or lose any population to meet the acceptable population deviation. However, as a result of the total population in the surrounding Districts, it was likely that District 12's border needed to change.

17.    Because the Committee unanimously agreed to start the redistricting process based off of the prior district boundaries, my primary concern for District 12 was to equalize the District's population so that the 10% population deviation for all Districts was met.

18.    As a result of the redistricting, District 12 lost 3,921 people.

19.    To achieve the proper population number, a portion of the Argyle community was shifted from District 12 to District 14.

20.     This area included what I considered a community of interest which fit within District 14, including the fact that the residents live in a common geographic area of Jacksonville that is naturally bounded by the Ortega River.

21.     I do not have my own definition of the term "communities of interest," but defer to the language in section 18.101(c) of the Jacksonville Ordinance Code. I never used the term "communities of interest" as a euphemism solely for race, nor do I understand the term to be defined so narrowly.

22.     By transferring the Argyle area from District 12 to District 14, communities of interest were joined.

23.     This change also reduced the number of City Council Districts the Argyle community was spread across from three (Districts10, 12, and 14) to two (Districts 10 and 14).

24.     One of the proposals raised during the redistricting process was to split the town of Baldwin, which was currently in District 12, to span across District 8 and District 12.

25.     This proposal could have equalized population between District 8 and District 12, but it would result in splitting a community of interest – the town of Baldwin.

26.     The town of Baldwin is located on the outer edge of Duval County and constitutes the fifth urban services district (Section 2.01, Jacksonville Code of

Ordinances). It is a quasi-municipality that has all governmental, corporate, and proprietary powers to conduct its own municipal government. It has its own charter, mayor, and council.

27.    This area fit within directly within the surrounding communities of interest located in District 12 because it is geographically more convenient for District 12 and its small-town nature is vastly different from the more urban area included in District 8. I did not want to give up the Town of Baldwin and felt like it needed to be in District 12.

28.    Rather than split this town – a distinct community of interest – into separate Districts, the focus shifted to joining communities of interest in the Argyle area.

29.    I agreed to the final borders of District 12 because it allowed the District to give up some population, which was necessary to maintain the acceptable deviation, while largely preserving and maintaining the existing boundaries and communities of interest.

30.    The Complaint filed by the Plaintiffs in this action alleges that District 12 has 11 split neighborhoods.  This is because the redistricting process itself was based off of the 2020 census blocks, not specific neighborhoods.

31.    At no point during the redistricting process did I aim to set a specific racial target population for District 12 or any other City Council District.

6

32.     The racial balance of some Districts was discussed during the redistricting process out of a concern to neither pack nor dilute the votes of minority citizens. However, my understanding is that these concerns represented only some of many considerations that influenced the Council's redistricting decisions, and did not predominate over all others.

33.     The race of the constituents I lost was not the predominant factor in the redistricting of the boundaries of District 12.

34.     I voted in favor of Ordinance 2022-01-E because I believed that the District lines contained therein comport are constitutional and it kept the Town of Baldwin intact.

35.     My vote in favor of Ordinance 2022-01-E and the District lines contained therein was not predominately driven by race.

I declare and state under penalty of perjury, that the foregoing is true and correct.

Executed this 2ᵗʰ day of August, 2022, in Duval County, Florida.


**RANDY WHITE**

# EXHIBIT A

# CITY COUNCIL DISTRICT 12



7

8

10

9

12

9

14

NORTH

JPDD
GIS

0   2,125 4,250      8,500        12,750        17,000
Feet

EXISTING CD BOUNDARIES

CITY COUNCIL DISTRICT 12

Developed by Howard Seltzer hseltzer@coj.net
2020 Districts based on 2020 US Census data
July 27, 2022
Content intended for illustrative purposes only