UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JACKSONVILLE BRANCH OF THE
NAACP, *et al.*,

    Plaintiffs,    Case No.:  3:22-cv-493-MMH-LLL

v.

CITY OF JACKSONVILLE, *et al.*,

    Defendants.

_____/

**DEFENDANTS' REMEDY BRIEF**

Defendants, City of Jacksonville, and Mike Hogan, in his official capacity as Duval County Supervisor of Elections (SOE), submit the following pursuant to the Court's direction of July 8, 2022.  *See* Doc. 26.  Without waiving any arguments in their Response to Plaintiffs' Motion for Preliminary Injunctive Relief, Doc. 41, Defendants detail below an appropriate remedy and associated process should the Court rule in favor of Plaintiffs.  A proposed Order on Defendants' suggested remedial process is attached as Exhibit A.

**I.     INTRODUCTION**

Even if the Court ultimately orders the City Council to draw new districts, any interim remedy and supporting rationale should be different from that suggested by Plaintiffs.  Plaintiffs' remedial rubric sidesteps precedent, lacks nuance, and expects unrealistic outcomes.  The Court should

therefore reject Plaintiffs' twenty-one day proposal, as well as their supporting analysis.

In the alternative, Defendants propose the following:

1. The March 2023 elections shall proceed under the district lines laid out in Ordinance 2022-01-E.

2. The City Council, in not less than five months, shall pass new district lines, subject to Plaintiffs' challenge and Court review.

3. If the Council is unable or otherwise does not pass new lines in the mandated time frame, the Court, or another judicially designated body, should draw new lines, again subject to party input and judicial review.

## II. THE COURT SHOULD REJECT PLAINTIFFS' REMEDY

It is without dispute that the Council should have the first opportunity to remedy any constitutional error in its district lines. *Wise v. Lipscomb*, 437 U.S. 535, 540 (1978). Only if the Council is unable or unwilling to do so is the Court presented with the "unwelcome obligation of creating an interim plan." *Perry v. Perez*, 565 U.S. 388, 392 (2012). The Court may do so on its own initiative, or appoint some other body for that task, remaining ever mindful of the "powerful concerns for comity involved in interfering with" a locality's legislative responsibilities. *Page v. Va. State Bd. of Elections*, No. 3:13cv678, 2015 WL 3604029, at *18 (E.D. Va. June 5, 2015); *see also Bethune-Hill v. Va.*

*State Bd. of Elections*, 368 F. Supp. 3d 872, 873 (E.D. Va. 2019); *Diaz v. Silver*, 932 F. Supp. 462, 449 (E.D.N.Y. 1996).

Plaintiffs' remedial argument, at its highest level, comports with these principles and brooks no opposition from Defendants. Defendants also raise no quarrel with other particulars of Plaintiffs' proffered structure including that the Council provide the Court with documentation related to its redistricting process not otherwise exempt from disclosure pursuant to Florida's Public Records Law, § 119 *et seq.*, F.S., and that any new plans – whether crafted by the Council or other body – be reviewed to ensure constitutionality. *See, e.g., Covington v. N.C.*, 267 F. Supp. 3d 664, 668-69 (M.D.N.C. 2017); *Johnson v. Mortham*, 926 F. Supp. 1460, 1494 (N.D. Fla. 1996). Likewise, Defendants understand that the Court, or other line drawing entity, may define core criteria to guide its process, while also deemphasizing or eliminating factors previously highlighted by the Council. *See, e.g., Perry*, 565 U.S. at 393; *Covington v. N.C.*, 283 F. Supp. 3d 410, 431-34 (M.D.N.C. 2018); *Personhuballah v. Alcorn*, 155 F. Supp. 3d 552, 561-65 (E.D. Va. 2016). Nor do Defendants object to the time-periods Plaintiffs lay out regarding challenges they may raise against Defendants' new plans, the Court's evaluation of the same, or the general process associated with a Court or third-party plan. *See* Doc. 39 at 2-3, 12-13, 15-16; Doc. 39-1 at 2.

Defendants do object, however, to Plaintiffs' twenty-one day time frame as unrealistic and unreasonable under the circumstances. Defendants further object to Plaintiffs' suggestion that the Council should be permitted to redraw district lines only if it has not been "intransigent" and elections are not imminent. Doc. 39 at 3-4. Despite their implication that the Council has veered close to intransigence, *id.* at 3-5, 8-9, 12, Plaintiffs allow that the Council should be granted the first opportunity to draw new districts because the March 2023 elections can go forward if the SOE knows the district lines by December 16, 2022. *See* Doc. 24-1 at 2. Plaintiffs' proposal thus subverts a core redistricting remedial principle (i.e., legislatures should have the first opportunity to craft new lines) to fact sensitive exceptions (i.e., an intransigent legislature or pending elections), while also evading case law undermining their position.[1]

Plaintiffs have done nothing to rebut the well-settled presumption of the good faith of the legislature, nor have they established the Council's intransigence. *See* Doc. 39 at 3-5, 8-9, 12. *See also generally Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018) ("the good faith of the legislature must be

---

[1] Plaintiffs' proffered time line is also incomplete, in that it does not outline what the Court should do if, after reviewing the Council's proposed plan, the Plaintiffs present an alternative plan. Doc. 39 at 12-13. Plaintiffs' time line also streamlines any consideration of whether the Court or some other party should draw new districts if the Council fails or is unable to do so, and the review process associated with the same. *Id.* at 3, 3-16. Below, Defendants provide alternative timelines that include these gaps. *See infra* Tables 1 and 2.

presumed"); *League of United Latin Am. Citizens v. Abbott*, No. 3:21-CV-259-DCG-JVB, 2022 WL 1410729, at *26 (W.D. Tex. May 4, 2022) ("The legislature is entitled to a presumption that it redistricts in good faith."); *Harris v. McCrory* 159 F. Supp. 3d 600, 604-05 (M.D.N.C. 2016) (Court "makes no finding as to whether individual legislators acted in good faith in the redistricting process, as no such finding is required."); *Smith v. Beasley*, 946 F. Supp. 1174, 1208 (D.S.C. 1996) ("We do not question the good faith of the legislature in adopting the . . . Plan . . . ."). Contrary to Plaintiffs' intimation, the Council's redistricting process bears no comparison to the legislative bodies in Plaintiffs' referenced cases. Doc. 39 at 3-4, 5; *Hayes v. La.*, 936 F. Supp. 360, 371-72 (W.D. La. 1996) (legislature submitted to court three different plans in four years, all of which the court deemed unconstitutional); *Terrazas v. Slagle*, 789 F. Supp. 828, 830, 831 (W.D. Tex. 1992) (convoluted procedural history and associated "shenanigans" left "Court with no real hope that further deference to the legislature" was warranted). *See also e.g.*, *Gonidakis v. Larose*, No. 2:22-cv-0733, 2022 WL 1175617, at *1 (S.D. Ohio April 20, 2022) (state legislature failed to select map despite election pending in two weeks and early voting underway); *Covington*, 283 F. Supp. 3d at 410 (litigation covered seven year time span, and included at least two different reviews by U.S. Supreme Court). *Compare Whitford v. Gill*, No. 15-cv-421-bbc, 2017 WL 383360, at *1 (W.D. Wis. Jan. 27, 2017) (no reason to "abrogate[e] . . . fundamental principle" of

5

permitting legislature opportunity to redeem district lines in absence of evidence of malice or intransigence).

Here, unlike the cases on which Plaintiffs rely, the Council has not repeatedly ignored Court orders to draw new district lines, nor has it, during a remedial process, drawn maps deemed to be unconstitutional. Rather, the Council is responding to the first legal challenge – ever – to any of its redistricting decisions,[2] and has been responsive to Plaintiffs' requests and queries since the onset of litigation. Plaintiffs may not like the district lines drawn by the Council, and may disagree with the legal positions and time lines proffered in these initial phases of litigation. However, Plaintiffs' disagreements with the Council's positions do not warrant the suggestion that the Council is intransigent or that it does not "take its Fourteenth Amendment obligations seriously." Doc. 39 at 1. The Court should therefore reject this argument out of hand.

The Court should similarly reject Plaintiffs' position that elections are not imminent. While the March 2023 elections are several months away, the City's election machinery is already well in gear. *See Merrill v. Milligan*, 142

---

[2] In the instant case, and without any legal challenge or court ruling indicating otherwise, the Council began its redistricting process from the uncontested posture that the lines drawn in 2011 were constitutional, and therefore the Council only needed to make changes as required by population growth and distribution. Nor had the Council ever faced a legal challenge to its redistricting decisions after the 1990 or 2000 census cycles. As such, the Council reasonably began its line drawing process believing in the validity of the 2011 lines to which it sought to make minor changes.

S. Ct. 879, 880 (2022) (Kavanaugh, J., concurring) (discussing *Purcell v. Gonzalez*, 549 U.S. 1 (2006) principle); *Reynolds v. Sims*, 377 U.S. 533, 585 (1964). *See also generally Moore v. Harper*, 142 S. Ct. 1089, 1089 (2022) (Kavanaugh, J., concurring); *Repub. Nat'l Comm. v. Demo. Nat'l Comm.*, 140 S. Ct. 1205, 1206-07 (2020); *League of Women Voters of Fla., Inc. v. Fla. Sec. of State*, 32 F. 4th 1363, 1370-1372 (11th Cir. 2022); *League of United Latin Am. Cit.*, 2022 WL 1410729 at *30-32; *Palmer v. Hobbs*, No. C22-5035RSL, 2022 WL 1102196, at *2 (W.D. Wash. April 13, 2022); *Alpha Phi Alpha Frat. Inc. v. Raffensperger*, No. 1:21-cv-5337-SCJ, 2022 WL 633312, at *74-76 (N.D. Ga. Feb. 28, 2022); *Pileggi v. Aichele*, 843 F. Supp. 2d 584, 592-94 (E.D. Pa. 2012); *Smith*, 946 F. Supp. at 1212. In such settings, courts veer away from granting plaintiffs' requested relief. *See Merrill*, 142 S. Ct. at 880-81 (Kavanaugh, J., concurring); *League of Women Voters of Fla., Inc.*, 32 F. 4th at 1370-1372; *League of United Latin Am. Cit.*, 2022 WL 1410729 at *30-32; *Palmer*, 2022 WL 1102196 at *2-4; *Alpha Phi Alpha Frat. Inc.*, 2022 WL 633312 at *74-76; *Pileggi*, 843 F. Supp. 2d at 592-94; *Smith*, 946 F. Supp. at 1212.

Here, the deadline for candidates to establish residency in the district they seek to represent passed in July, prior to Plaintiffs seeking injunctive relief. Doc. 41 at 30-31. Likewise, individuals who wish to qualify through the petition process are currently collecting signatures. *Id.* at 31-32. Any "chaotic [and] last-minute reordering" of the districts, therefore, could result in

7

"significant cost, confusion, or hardship" to voters, candidates, and the City. *Merrill*, 142 S. Ct. at 881 (Kavanaugh, J. concurring); *Alpha Phi Alpha Frat. Inc.*, 2022 WL 633312 at *75; *see also* Doc. 40-32. Moreover, any urgency related to imminent or passed election deadlines is a result of the Plaintiffs' delay in bringing this action and seeking relief. *See Flores v. Town of Islip*, 382 F. Supp. 3d 197, 250 (E.D.N.Y. 2019). Plaintiffs therefore wrongly contend that the March 2023 elections are distant enough that implementing new lines is possible, and they overlook that any *Purcell* timing problems are of their own making. *See* Doc. 39 at 6 n.1, 8.

Plaintiffs – without support – further surmise it would pose little to no difficulty for the Council to craft new lines in twenty-one days,[3] and suggest that this timeline is "generous to Defendants relative to what other courts have

---

[3] In an attempt to justify their twenty-one day schedule, Plaintiffs point to an example of the Council's speedy passage of legislation associated with the August 2022 special elections. Doc. 39 at 7. It is one thing to pass legislation requiring the Council to set into motion settled and established election machinery. It is an entirely different matter, however, to require the Council to completely dismantle and then rebuild that machinery in a compressed time.

In the instant case, the Council declined to expedite the redistricting process in order to ensure full transparency and citizen participation, resulting in a seven-month process. *See generally* Doc. 40-2; Doc. 40-3; Doc. 40-31 at ¶¶19-20. Here, Plaintiffs suggest the Court to order the Council to do the opposite – fashion new lines in a hurried manner with limited public input, thereby exacerbating rather than alleviating concerns regarding transparency and citizen participation, while also risking mistakes and exposing the Council to future legal challenges. *See also e.g.*, Phil Prazan, *After Address Mistakes, Broward Election Officials Urge Voters to Check Information*, (August 12, 2022), NBC6 SOUTH FLORIDA, https://www.nbcmiami.com/decision-2022/after-address-mistakes-broward-election-officials-urge-voters-to-check information/2834655/?_osource=db_npd_nbc_wtvj_eml_shr

8

done in similar situations." Doc. 39 at 3, 5-6 (citing cases). Plaintiffs' cited cases, however, are not at all similar to the instant matter. *See Singleton v. Merrill*, No. 2:21-cv-1291-AMM, 2022 WL 265001, at *81 (N.D. Ala. Jan. 24, 2022) (legislature had "at least eleven illustrative remedial plans to consult"), *stay granted on other grounds sub nom Merrill*, 142 S. Ct 879 (2022); *Calvin v. Jefferson Cty. Bd. of Comm'rs*, 172 F. Supp. 3d 1292, 1325 (N.D. Fla. 2016) (short time frame warranted where plaintiffs submitted illustrative plan which expert deemed constitutional); *Harris*, 159 F. Supp. 3d at 627 (two week deadline set pursuant to state law); *U.S. v. Osceola Cty., Fla.*, 475 F. Supp. 2d 1220, 1230 (M.D. Fla. 2006) (plaintiffs' expert previously presented several plan proposals to court); *Larios v. Cox*, 305 F. Supp. 2d 1335, 1341-42 (N.D. Ga. 2004) (court rejected defendants' objection to short remedial time frame, where defendants first raised concerns only after full discovery and trial); *Veith v. Pa.*, 195 F. Supp. 2d 672, 675-76 (M.D. Pa. 2002) (during litigation, Defendants presented constitutional plan); *Johnson*, 926 F. Supp. at 1466, 1488, 1494-95 (where legislature presented multiple plans to judicial panel selected to redraw district lines, but judicial panel's final plan was deemed unconstitutional, it was reasonable to give the legislature short time frame to craft new district lines, as legislature had numerous proposed maps at its disposal).

By contrast, the Council does not have at its immediate access numerous alternative maps representing a wholesale revision – as demanded by

Plaintiffs – of the challenged districts. *See* Doc. 39 at 9. Rather, when the Council took into account the City's population growth and location of that growth pursuant to the 2020 census, the Council explicitly decided to start the redistricting process from the existing lines, and only made changes as needed therefrom. *See* Doc. 34-3 at 9; Doc. 34-10 at 2; Doc. 40-2 at 40-42, 61-62, 64-65; Doc. 40-13 at ¶¶ 8, 10, 12; Doc. 40-14 at ¶¶7-10; Doc. 40-23 at ¶8; Doc. 40-28 at ¶¶7, 18; Doc. 40-31 at ¶¶ 21-22. Hence, the most recent redistricting process did not leave the Council with a trove of alternative plans to consider should the Court order it to draw new districts.

In this context, the Council acknowledges Plaintiffs' offer of access to their experts' analysis and simulated plans, *see* Doc. 90 at 10 n.6, and may indeed take them up on the offer, if advisable. However, those simulations and data are not necessarily as robust as Plaintiffs suggest. *See* Doc. 41 at 22-26. Hence, even if the Council were to use Plaintiffs' information as a starting point, it nonetheless requires careful review and critique. Defendants also need to employ the same care and deliberation when drawing new district lines so as to ensure that any new plan comports with the Voting Rights Act while also withstanding strict scrutiny review. *See generally* 52 U.S.C. § 10301; *Bethune-Hill v. Va. State Bd. of Elections*, 137 S. Ct. 788, 800-01 (2017).

Plaintiffs further contend that any new plan must represent more than mere "tinker[ing] around the edges" of the challenged districts. Doc. 39 at 9.

10

Accordingly, while Plaintiffs have only challenged Districts 2, 7, 8, 9, 10, 12, and 14, *see* Doc. 1 at ¶¶264-65, any redistricting process may need to consider the entire City.  For example, District 2 shares boundaries with Districts 1, 4, 3 and 13.  *See* Doc. 40-1.  Likewise, District 11, which had the largest population growth and required the greatest changes to its borders, shares boundaries with Districts 3, 4, and 13.  *See* Doc. 40-1; Doc. 40-13 at ¶¶9, 23.  Accordingly, the Council may need to do more than only refashion the challenged districts.  If the Court orders such a wholesale revisions, more time will be required.

Plaintiffs' twenty-one day deadline also overlooks that the Jacksonville Council is a part-time legislative body that must operate in compliance with local and state Sunshine Laws, as well as City Charter and Ordinance provisions, all of which add time to any redistricting process. *See generally* §§ § 5.02, JACKS. CHARTER; §18 *et seq.*, 15.101 *et seq.*, 129.102, Jacksonville Ord. Code; https://www.coj.net/city-council.  Likewise, if commanded to refashion its district lines, the Council will likely do so with newly elected representatives to Districts 7 and 9 – districts challenged in the instant litigation, but not in the most recent August 2022 election cycle.  These new representatives will begin their tenures in the midst of the Council's dismantling of the districts they were just elected to represent, while the Council must simultaneously

seek to comply with City incumbency protection requirements. *See generally* §§ 18.108, 18.110, Jacksonville Ord. Code.

Finally, contrary to Plaintiffs' allegations otherwise, *see* Doc. 43 at 8, 10, in no manner have Defendants backtracked or withdrawn from their representation that "in order to proceed with the 2022 general consolidated elections, the [SOE] needs to know the City Council district boundaries no later than Friday, December 16, 2022." Doc. 24-1 at 2. If by that date, the SOE knows the boundaries, it will ensure that the March 2023 elections proceed accordingly, despite whatever hardship, undue burden, or confusion may result. *Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring); Doc. 40-32. Regardless, Defendants' point is that it will be nearly impossible for a newly-crafted and Court-approved district map to be in place by December 16, 2022, and even if it could be, the undue burdens, confusion and hardships associated with doing so weigh against implementing new lines at this time. Moreover, a large part of the associated impossibility and hardship is due to Plaintiffs' delay in requesting preliminary injunctive relief.

Only in a perfect world, therefore, where the Court has nothing else on its calendar, immediately rules on this matter, and Defendants decline to seek a stay of the Court's order pending any appeal, can new lines be established by

12

December 16, 2022. As the following tables demonstrate,[4] Plaintiffs fare best under a timeline where the City produces a map raising no objection from Plaintiffs, or where the City fails to produce a map, and the Court, rather than some other judicially designated entity, draws an interim remedial map to Plaintiffs' liking. These timelines, however, do not take into account delays should Defendants seek a stay of the Court's order pending appeal. Nor do the timelines consider that the Court might approve interim maps Plaintiffs find unacceptable thereby prompting Plaintiffs to appeal. Rather, pursuant to most of the timelines below, this matter will likely not be resolved before mid-December.

| TABLE 1: CITY PRODUCES MAP ||
|---|---|
| Date | Event/time frame |
| 9/20/2022 | Court issues Order in favor of Plaintiffs (4 days after hearing) |
| 10/11/2022[5] | City produces new map (21 days) |
| 10/14/2022 | City files supporting documents (3 days) |
| 10/20/2022 | Plaintiffs challenge (9 days from map production) |
| 10/27/2022 | Defendants respond (7 days after Plaintiffs' objections) |
| 11/8/2022 | Evidentiary hearing (12 days) |

---

[4] The tables were created for illustrative purposes only and Defendants do not suggest the Court, or any party, is bound to the timelines listed therein. Defendants selected the initial date of September 20, 2022, based on the September 16, 2022 hearing date for this matter. Defendants then selected deadlines that aligned with or were similar to those set out by Plaintiffs, which appear to represent calendar days, without consideration of weekends or holidays. Certainly, the Court could compress or expand these timelines as it sees fit. Should the timelines take into account weekends or federal holidays, the case could be pushed into January of 2023.

[5] Dates will be impacted if Defendants seek to stay the injunction pending appeal. The same is true should either party seek a stay pending appeal of any other order the Court may issue in this process.

| Date | Event/time frame |
|---|---|
| 11/15/2022 | Court issues Order on map constitutionality (7 days) |
| 11/18/2022 | If unconstitutional, parties brief whether Court or other party draws new map – Option A or Option B below (3 days) |
| 11/23/2022 | Hearing on whether Court or other party draws new map (5 days) |
| 11/26/2022 | Court issues Order on who will draw new map – Option A or Option B below (3 days) |
| *OPTION A: OTHER ENTITY DRAWS MAP* | |
| 12/3/2022 | Both parties submit proposals (7 days) |
| 12/6/2022 | Both parties respond (3 days) |
| 12/11/2022 | Map proposal submitted to Court (5 days) |
| 12/18/2022 | Parties challenge submitted map (7 days) |
| 12/25/2022 | Hearing on map proposals (7 days) |
| 12/30/2022 | Court orders final map (5 days) |
| *OPTION B: COURT DRAWS MAP* | |
| 12/3/2022 | Both parties submit proposals (7 days) |
| 12/6/2022 | Both parties respond (3 days) |
| 12/13/2022 | Evidentiary hearing (7 days) |
| 12/19/2022 | Court orders final map (6 days) |

| **TABLE 2: CITY FAILS TO PRODUCE MAP** ||
|---|---|
| Date | Event/time frame |
| 9/20/2022 | Court issues Order in favor of Plaintiffs (4 days after hearing) |
| 10/11/2022 | City fails to produce map (21 days) |
| 10/14/2022 | Parties brief whether Court or other designated party draw new map (3 days) |
| 10/19/2022 | Hearing on whether Court or other party draws new map (5 days) |
| 10/22/2022 | Court issues Order on who will draw new map – Option A or Option B below (3 days) |
| *OPTION A: OTHER ENTITY DRAWS MAP* | |
| 10/29/2022 | Both parties submit proposals (7 days) |
| 11/1/2022 | Both parties respond (3 days) |
| 11/6/2022 | Map proposal submitted to Court (5 days) |
| 11/13/2022 | Parties challenge submitted map (7 days) |
| 11/20/2022 | Hearing on map proposals (7 days) |
| 11/27/2022 | Court orders final map (7 days) |
| *OPTION B: COURT DRAWS MAP* | |
| 10/29/2022 | Both parties submit proposals (7 days) |

14

| 11/1/2022 | Both parties respond (3 days) |
|---|---|
| 11/8/2022 | Evidentiary hearing (7 days) |
| 11/14/2022 | Court orders final map (6 days) |

In light of the above, the Court should reject Plaintiffs' remedy proposal.

### III. PROPOSED REMEDY

Should the Court rule that the challenged districts violate the Constitution, the Plaintiffs are entitled to "vote as soon as possible for their representative under a constitutional apportionment plan." *Harris*, 159 F. Supp. 3d at 627. However, a "quick plan . . . is not necessarily a good plan." *Alpha Phi Alpha Frat. Inc.*, 2022 WL 6333312 at *75. As previously discussed, Plaintiffs' remedial structure has a tenuous legal foundation, lays out unrealistic timelines, and could result in a new plan prone to additional litigation.

In this regard, voting rights litigation is complex and its resulting case law ever evolving. Benchmark cases provide the scaffolding for analyzing disputes, but those cases can be cited for various propositions and are often in conflict with one another. *Compare e.g.*, *Veasey v. Abbott*, 830 F. 3d 216, 270 (5th Cir. 2016) (*Wise* cited for proposition that courts should draw new district lines when legislature unresponsive or elections imminent); *Wright v. Sumter Cty. Bd. of Elections and Regis.*, No. 1:14-cv-42 (WLS), 2020 WL 499615, at *3 (M.D. Ga. Jan. 29, 2020) (same); *Johnson*, 926 F. Supp. at 1494 (same) *with Walen v. Burgum*, No. 1:22-cv-31, 2022 WL 1688746, at *6 (D.N.D. May 26,

15

2022) (*Wise* cited for proposition that legislature should have first opportunity to draw new district lines); *Whitford,* 2017 WL 383360 at *1 (same); *Calvin*, 172 F. Supp. 3d at 1325 (same); *Page*, 2015 WL 3604029 at *18 (same); *Larios*, 305 F. Supp. 2d at 1342 (same); *Smith*, 946 F. Supp. at 1213 (same). *Compare also e.g.*, *Wright*, 2020 WL 499615 at *3 (*Reynolds v. Sims*, 377 U.S. 533 (1964) cited for proposition that elections should not be conducted under unconstitutional plan) *with Gonidakis*, 2022 WL 1175617 at *19 (*Reynolds* cited for proposition that where election machinery is in gear courts must let elections go forward under invalid plans); *Alpha Phi Alpha Frat. Inc.*, 2022 WL 633312 at *74-75 (same); *Pileggi*, 843 F. Supp. 2d at 593 (same); *Smith*, 946 F. Supp. at 1211 (same); *Diaz*, 932 F. Supp. at 465-66 (same).

Likewise, with each generation of voting rights litigation, emerging jurisprudence eclipses older methodologies. *See, e.g.*, *Merrill*, 142 S. Ct. at 878-82 (Kavanaugh, J., concurring) (discussing emergence and predominance of *Purcell* principle); *League of United Latin Am. Cit.*, 2022 WL 1410729 at *32 (noting judicial reluctance to alter election rules at last minute was "decades in the making"). Here, Plaintiffs have downplayed a body of ascendant legal reasoning that severely weakens their remedial analysis.

In particular, Plaintiffs ignore the *Reynolds* and *Purcell* family of cases. *Reynolds* and *Purcell* guide that when election machinery is in gear and elections imminent, courts should refrain from mandating revision of election

16

laws so as to avoid "disruption and . . . unanticipated and unfair consequences for candidates, political parties, and voters . . . ." *Merrill*, 142 S. Ct. at 880 (Kavanaugh, J., concurring); *Reynolds*, 377 U.S. at 585. *See also e.g., League of Women Voters of Fla., Inc.*, 32 F. 4th at 1370-1372; *League of United Latin Am. Cit.*, 2022 WL 1410729 at *30-32; *Palmer*, 2022 WL 1102196 at *2; *Alpha Phi Alpha Frat. Inc.*, 2022 WL 633312 at *74-76; *Pileggi*, 843 F. Supp. 2d at 592-94; *Smith*, 946 F. Supp. at 1212.

Supreme Court dicta also directs that when parties find themselves in the midst of functioning election machinery and close to an election, where that closeness is because the plaintiffs delayed bringing suit, courts should be reticent to grant relief. *Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring). In such cases, elections may go forward, even if under plans deemed infirm. *See, e.g., Upham v. Seamon*, 456 U.S. 37, 44 (1982); *Kilgarlin v. Hill*, 386 U.S. 120, 121 (1967); *Roman v. Sincock*, 377 U.S. 695, 709-10 (1964). Plaintiffs ignore this line of authority when implying that the pending March 2023 elections and associated deadlines are of no concern. *See* Doc. 39 at 3-4, 7, 8-9. Rather, the law guides that when, as here, an election cycle is already in gear, courts should not mandate new district lines.

Should, however, the Court rule in favor of Plaintiffs, the Council should have the first opportunity to cure any constitutional defects in the City's district lines. The time line mandated for any cure must also take into account

the extent to which elections are imminent and attendant systems already in process. As noted elsewhere, although certain election deadlines have passed and others are rapidly approaching, Plaintiffs nonetheless chose to wait four months after the City's enactment of the redistricting Ordinance to seek injunctive relief. Accordingly, Defendants propose the following:

The Court should order that the March 2023 elections proceed under the current district lines. The Court should also order the Council to craft new lines pursuant to the City Charter and Ordinance Code, but within a reasonable time frame. Any plan would be subject to challenge by the Plaintiffs and final Court review.

In this regard, the City Charter and Ordinance Code lay out a process, which at most, lasts eight months. *See generally* § 5.02, JACKS. CHARTER; §18 *et seq.*, Jacksonville Ord. Code. In compressing this time frame, Defendants suggest the following timeline of up to five months:[6] two and a half weeks to appoint a Redistricting Committee, establish criteria, retain experts, and collect/provide data for analysis; three weeks for experts to analyze the data and create map options; four weeks for the Committee to review the proposed maps, propose changes, and finalize the plans; three weeks for the Committee to conduct statutorily required public hearings, *see* §18.107(b), Jacksonville

---

[6] A five-month timeline takes into account that Districts other than those challenged by the Plaintiffs may be affected by any remedial process. If the redistricting can be limited to only the challenged districts, the remedial process may only take three to four months.

18

Ord. Code; and two and a half weeks for the Committee to send a final plan to the full Council for approval. *Id.* at § 18.107(c).  If the Council nonetheless fails or refuses to create a constitutional plan, the Court should, on its own, or by appointing a third party, draw new district lines, again with contributions from the parties and with appropriate timelines to allow for challenges and review.

## IV.   CONCLUSION

If the Court rules in favor of Plaintiffs' request for injunctive relief, the Council should have the first opportunity to draw new district lines.  Because, however, certain March 2023 election deadlines have passed and others are imminent, the Court should order that the upcoming 2023 elections proceed under the current district lines but order the Council to draw new lines under a reasonably set time frame with accompanying process.  Should the Council be unable or fail to draw a new district boundaries, the Court, or a judicially identified entity, should do so, again with feedback from the parties and subject to judicial review.

Respectfully submitted,
**OFFICE OF GENERAL COUNSEL**
**CITY OF JACKSONVILLE**

*/s/Mary Margaret Giannini*
**Jon R. Phillips**
Deputy General Counsel
Florida Bar No.: Florida Bar No.: 273813
JPhillips@coj.net, CRegister@coj.net
**Sonya Harrell**
Chief, Tort and Employment Litigation

19

        Florida Bar No. 0042803
SonyaH@coj.net; BOsburn@coj.net
**Mary Margaret Giannini**
Assistant General Counsel
Florida Bar No. 1005572
MGiannini@coj.net; SStevison@coj.net
**Helen Peacock Roberson**
Assistant General Counsel
Florida Bar No.: 0016196
HRoberson@coj.net; CStephenson@coj.net
117 West Duval Street, Suite 480
Jacksonville, FL 32202
Phone: (904) 255-5100
Facsimile: (904) 255-5120
*Attorneys for Defendants, City of Jacksonville and Mike Hogan, in his official capacity as Duval County Supervisor of Elections*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 24th day of August, 2022 a copy of this document was filed electronically through the CM/ECF system and furnished by email to all counsel of record.

                         */s/ Mary Margaret Giannini*
                              Attorney