IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JACKSONVILLE BRANCH OF THE
NAACP; NORTHSIDE COALITION OF
JACKSONVILLE, INC.; ACLU OF
FLORIDA NORTHEAST CHAPTER;
FLORIDA RISING TOGETHER, INC.;
MARCELLA WASHINGTON; INGRID
MONTGOMERY; AYESHA FRANKLIN;
TIFFANIE ROBERTS; ROSEMARY
McCOY; SHEILA SINGLETON;
EUNICE BARNUM; JANINE                    Case No. 3:22-cv-493-MMH-LLL
WILLIAMS; and DENNIS BARNUM,

   *Plaintiffs*,

v.

CITY OF JACKSONVILLE and MIKE
HOGAN, in his official capacity as Duval
County Supervisor of Elections,

   *Defendants*.

_____/

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** ("Agreement") is entered into by Plaintiffs, Jacksonville Branch of the NAACP, Northside Coalition of Jacksonville, Inc., ACLU of Florida Northeast Chapter, Florida Rising Together, Inc., Marcella Washington, Ingrid Montgomery, Ayesha Franklin, Tiffanie Roberts, Rosemary McCoy, Sheila Singleton, Eunice Barnum, Janine Williams, and Dennis Barnum, and Defendants, the City of Jacksonville and the Duval County Supervisor of Elections, (each a "Party" and together the "Parties").

## RECITALS

**WHEREAS,** on May 3, 2022, Plaintiffs filed their Complaint against the Defendants alleging that Ordinance 2022-01-E (the "Enacted Plan"), which redrew the Jacksonville City Council and Duval County School Board districts for the next decade, violated the Equal Protection Clause of the Fourteenth Amendment and the

Jacksonville City Charter (the "Litigation"); and

**WHEREAS,** on October 12, 2022, this Court, as connected with Plaintiffs' request that the Court preliminarily enjoin Defendants from using the Enacted Plan in upcoming elections, and after considering the evidence submitted alongside the preliminary injunction briefing, found it was substantially likely that the Enacted Plan violated the Equal Protection Clause, granted a preliminary injunction in Plaintiffs' favor on their racial gerrymandering claim under the Equal Protection Clause, preliminarily enjoined the Enacted Plan, and ordered the City to draw new district lines "in a manner that comport[ed] with the Constitutional mandate of the Equal Protection Clause"; and

**WHEREAS,** in response to the preliminary injunction order, on November 4, 2022, the Jacksonville City Council passed Ordinance 2022-800-E containing its proposed interim remedial plan, to which Plaintiffs submitted objections; and

**WHEREAS,** on December 19, 2022, this Court entered its remedial order sustaining Plaintiffs' objections and ordering the Defendants to use P3, one of the Plaintiffs' proposed alternative interim remedies, beginning with the regular 2023 Council and 2024 School Board elections; and

**WHEREAS,** Defendants appealed the Court's remedial Order and selection of P3, and this appeal is currently pending before the Eleventh Circuit Court of Appeals (the "Remedial Order Appeal"); and

**WHEREAS,** the Parties now wish to avoid the cost, risk, and uncertainty associated with further litigation, and seek to compromise and completely resolve the Litigation and the Remedial Order Appeal.

**NOW THEREFORE** in consideration of the foregoing, and the following covenants, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Effective Date.** The Effective Date of this Agreement shall be the date on which this Agreement is approved by the Court.

2. **Agreement Subject to Council Approval.** This Agreement will be subject to approval ("Council Approval") by the Jacksonville City Council ("Council"). In the event an appeal is taken of the Council Approval, or an independent third-party action is filed challenging this Agreement, the Parties shall cooperate to the fullest extent allowed by law to sustain this Agreement and the transaction contemplated herein. ~~If the Council rejects this Agreement or does not approve it within two (2) months of the Effective Date, this Agreement shall terminate~~ *MMH*

~~and be of no further force or effect, and the Parties will return to their respective positions as they existed immediately prior to the execution of this Agreement.~~ *(MMH)*

3. **Adoption of P3.** The City agrees to employ "P3," the interim districting plan ordered by the Court in its December 19, 2022, Order, as its redistricting plan for the Jacksonville City Council and Duval County School Board district boundaries for the 2020 decennial census term. Unless otherwise ordered by a court of law, the City will not redistrict its City Council and School Board district boundaries until required by Sections 5.02 and 13.03 of the Charter of the City of Jacksonville and Section 18 of the Ordinance Code of the City of Jacksonville. Attached as Exhibit 1 is a copy of the P3 map; attached as Exhibit 2 are the City Council districts based on the 2020 United States Census data, as described by census blocks; and attached as Exhibit 3 are the School Board districts based on the 2020 United States Census data, as described by census blocks. The Council shall employ P3 in accordance with this paragraph upon the Court's approval of this Agreement pursuant to paragraph 7, below.

4. **Entry of Judgment.** The Parties request that, in addition to the process described in Paragraph 3, the Court enter a Final Judgment: (1) approving this Agreement, (2) ordering Defendants to employ "P3" as the City's redistricting plan for the 2020 decennial census term; (3) requiring Defendants to use "P3" until redistricting is required by Section 5.02 and 13.03 of the Charter of the City of Jacksonville and Section 18 of the Ordinance Code of the City of Jacksonville, unless otherwise ordered by court of law; (4) retaining jurisdiction to (a) adjudicate Plaintiffs' potential request, to be made through a motion, that the Court order special elections for School Board Districts 4 and 6, to be held concurrent with the regular 2024 elections; and (b) enforce the provisions of this Agreement; and (5) dismissing the action with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2). The Parties agree that, if the Court enters such a Final Judgment, the Parties will not appeal that Final Judgment.

5. **Dismissal of the Remedial Order Appeal.** Within five days of the Court's approval of the Parties' settlement agreement, Defendants shall withdraw and notice a Federal Rule of Appellate Procedure 42(b)(1) stipulated dismissal of their appeal of the interim remedial districting plan in Case No. 22-14260.

6. **Payment to Plaintiffs.** The City shall pay to Plaintiffs the sum of one hundred thousand dollars ($100,000.00) in compromise and settlement of their claims for attorneys' fees and costs incurred in this matter, including the Litigation and all appellate proceedings. Payment shall be made to the President and Fellows of Harvard College, acting through the Election Law Clinic at Harvard Law School, within 60 days of the Court's approval of this Agreement. The Parties are otherwise responsible for their own attorneys' fees and costs.

7. **Approval by Court.** The Parties shall seek Court approval of this Agreement through a joint motion, in substantially the form attached as Exhibit 4. If the Court does not approve all terms in this Agreement, including that of retaining jurisdiction for the limited purposes described in Paragraph 8, this Agreement shall terminate and be of no further force or effect, and the Parties will return to their respective positions as they existed immediately prior to the execution of this Agreement.

8. **Limited Retention of Jurisdiction.** Notwithstanding the Court's potential conclusion of the Litigation pursuant to its approval of this Agreement, the Parties request that the Court retain jurisdiction for the sole purposes of: (1) adjudicating Plaintiffs' potential request, to be made through an opposed motion, that the Court order special elections for School Board Districts 4 and 6, to be held concurrent with the regular 2024 elections, and (2) enforcing the provisions of this Agreement. Should Plaintiffs desire to seek special elections for School Board Districts 4 and 6, Plaintiffs shall file any such motion no later than 30 days from the Court's approval of this Agreement, or as otherwise directed by the Court. Defendants shall respond in opposition to such Motion in accordance with the Local Rules, or as otherwise directed by the Court. Should the Plaintiffs no longer desire to file such motion, they shall notify the Court immediately. Nothing in this Agreement shall prevent the Parties from appealing any decision on the Motion.

9. **Mutual Release.** Upon Court approval of this Agreement, each of the Parties, on their own behalf and on behalf of their respective officers, representatives, assigns, predecessors, successors, agents, and attorneys (each a "Releasing Party"), shall release, remise, and discharge the other Party and such Party's present and former officers, agents, representatives, assigns, predecessors, successors, affiliates, and attorneys (each a "Released Party"), from and of any and all claims, demands, actions, causes of action, suits, sums of money, and promises, of every kind and nature, in law or in equity, whether sounding in tort or otherwise, that were brought in the Litigation and related appellate proceedings. Each of the Releasing Parties shall also release, remise, and discharge each Released Party from and of any and all claims, demands, actions, causes of action, suits, sums of money, and promises, of every kind and nature, in law or in equity, whether sounding in tort or otherwise, whether or not they have been subject to dispute, and whether known or unknown to the Releasing Party, which each Releasing Party had, now has, or may have hereafter against each Released Party by reason of any fact, event, act, matter, cause, or thing whatsoever, arising from, or related to the redistricting in Ordinance 2022-001-E and Ordinance 2022-800-E.

10. **Representation of Authority.** The Parties represent and warrant to each other: that they have had the assistance and advice of counsel and are fully aware of and have been fully advised of the terms, conditions and consequences of this

Agreement; that an individual who executes this Agreement on behalf of an organizational Party is authorized to sign this Agreement for and bind that Party; that all requisite approvals for authority have been obtained or granted; that the Party owns and has not sold, pledged, hypothecated, assigned, or transferred any of the claims, actions, causes of action, suits, damages, losses, judgments, executions, demands, liabilities, guarantees, obligations, responsibilities, liens, expenses, costs, or attorneys' fees released within this Agreement; and no trustee, assignee, affiliate, or creditor owns or has any interest in these claims or the Litigation.

11. **Stay of Litigation.** From the date of this Agreement through the acceptance or rejection of this Agreement by the District Court, except as provided in Paragraph 8 or as otherwise ordered by any court, the Parties agree that no actions shall be taken by either Party to advance the Litigation and that any pending discovery in the Litigation shall be stayed.

12. **Counterparts and Facsimile Signatures.** This Agreement and any amendments hereto may be signed in counterparts with the same effect as if the signatures to each counterpart were upon a single instrument, and all such counterparts together shall be deemed an original of this Agreement or the amendment, as applicable. For purposes of this Agreement and any amendment hereto, a facsimile copy of a Party's signature (including a copy transmitted by email in PDF or similar format) or insertion of electronic signature shall be deemed an original and shall be sufficient to bind such Party.

13. **Integration.** Each Party warrants that no promise, inducement, or agreement not expressed in this Agreement or any of the attached Exhibits (collectively, the "Agreements") has been made in connection with the Agreements. The Agreements constitute the entire understanding between the Parties with respect to their subject matter and supersede and replace all prior negotiations or proposed agreements, and all prior representations, warranties, statements, promises and understandings, written or oral, between the Parties with respect to the subject matter of the Litigation, related appeals, and the Agreements. After Council Approval, the Agreements may not be amended, supplemented, or otherwise modified except by a written instrument executed by each of the Parties as described above.

14. **Further Assurances.** The Parties agree to execute such other documents and take such further actions as may be reasonably necessary to carry out the purpose and terms of this Agreement, with each Party paying its own costs and attorney's fees associated therewith. This provision will survive the Court's acceptance of this Agreement.

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement as of the day and year set forth below.

[End of Agreement - Signatures to Follow]

By: _____
Isaiah Rumlin

Jacksonville Branch of the NAACP

By: _____
Ben Frazier

Northside Coalition of Jacksonville, Inc.

By: _____
BeJae Shelton

ACLU of Florida Northeast Chapter

_____
**Signature**

Florida Rising Together, Inc., Christian Gonzalez-Orbegoso

By: _____
   Marcella Washington

By: _____
   Ingrid Montgomery

By: _____
   Ayesha Franklin

By: _____
   Tiffanie Roberts

By: _____
   Rosemary McCoy

By: _____
   Sheila Singleton

By: _____
   Eunice Barnum

By: _____
       Janine Williams

By: _____
       Dennis Barnum

## CITY OF JACKSONVILLE

By: _____

Its: _____

Dated: April __, 2023.

Form Approved:

_____
Office of General Counsel

By: _____
James R. McCain, Jr.
Corporation Secretary

DUVAL COUNTY SUPERVISOR OF ELECTIONS

By: *Mike Hogan*

Its: *Supervisor of Elections*

Dated: April 19, 2023.

Form Approved:

*Helen Ree*

Office of General Counsel

II



EXHIBIT 1: PLAINTIFF 3 – "P3"