IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JACKSONVILLE BRANCH OF
THE NAACP, et al.,
    Plaintiffs,

                                                                                             Case No. 3:22-cv-493-MMH-LLL

v.

CITY OF JACKSONVILLE, et al.,
    Defendants.
                                       /

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION TO ORDER SPECIAL ELECTIONS
FOR DUVAL COUNTY SCHOOL BOARD DISTRICTS 4 AND 6**

For the first time since filing suit in May 2022, Plaintiffs claim that Duval County School Board Districts 4 and 6 (SBDs) are racially gerrymandered due to boundaries drawn by the City Council in 2011. Doc. 134 at 4-6 (Motion). They therefore ask the Court order special elections to cure this alleged injury. *Id.* at 1. Plaintiffs, however, lack standing to make this request, and in presenting their Motion, invite the Court to disregard the jurisdictional boundaries of Art. III, section 2 of the U.S. Constitution. *See Flast v. Cohen*, 392 U.S. 83, 94-95 (1968). Plaintiffs' request cannot be justified.

Rather, in an action for which judgment has been entered and the case dismissed, *see* Docs. 131 (Order Approving Settlement), 132 (Final Judgment), Plaintiffs now essentially seek to amend their Complaint, add a new claim, and

obtain immediate relief for the same. This, they cannot do. Plaintiffs have never presented the Court with the case and controversy for which they presently seek relief, nor do they have standing to do so. Accordingly, Plaintiffs' petition for special elections is not necessary, fair, or workable. *See North Carolina v. Covington*, 581 U.S. 486, 488 (2017). Defendants therefore respectfully request the Court deny Plaintiff's Motion seeking special elections for SBDs 4 and 6.

## MEMORANDUM OF LAW

### I. BACKGROUND

On May 3, 2022, Plaintiffs filed suit alleging the City Council, when it passed council district lines in March 2022, racially gerrymandered Districts 2, 7, 8, 9, 10, 12 and 14. Doc. 1 at ¶¶ 261-69 (Complaint).[1] Because SBDs are predicated on council lines, Plaintiffs also alleged the March 2022 SBDs 4, 5, and 6 were unconstitutional. *Id.* Plaintiffs therefore requested the Court declare the challenged council districts and SBDs unlawful; "preliminarily and permanently enjoin Defendants . . . from calling, holding, supervising, or certifying any elections in the Challenged Districts as defined" by the March 2022 lines, *id.* at 65; and order "Defendants to hold special elections in the Challenged Districts as defined [by the March 2022 lines] to limit the harm to

---

[1] Plaintiffs also alleged that the Council drew the district lines in violation of the City Charter. *See* Complaint at ¶¶ 270-277.

2

Plaintiffs *should adequate relief be unavailable prior to the next regularly scheduled elections.*" *Id.* (emphasis added).

On July 22, 2022, Plaintiffs sought preliminary injunctive relief requesting the Court enjoin Defendants from using the March 2022 lines in future elections pending the Court's final judgment. Plaintiffs requested that in the interim, the Court order Defendants to use a constitutional map, drafted either by the Council, or in the alternative, by the Plaintiffs. *See* Doc. 36 at 1 (PI Motion); Doc. 39 at 2-3 (Remedial Brief). After briefing and oral argument, the Court determined Plaintiffs demonstrated a substantial likelihood of success on the merits of their gerrymandering claim, enjoined the City from using the March 2022 map, and ordered the Council to draw a remedial plan no later than November 8, 2022. Doc. 53 at 137 (PI Order). The Council did so, *see* Doc. 67 (IRP), to which Plaintiffs objected and presented alternative maps. *See* Doc. 92-2 (Remedial Objections). The Court ultimately rejected the IRP, and selected Plaintiffs' proffered P3 map for the March 2023 elections (and correspondingly modified SDBs 4 and 6 to reflect this change) pending final judgment in this action. Doc. 101 at 58 (Remedial Order).

The parties later reached a settlement, the terms of which included that Defendants adopt P3 "as its redistricting plan for the Jacksonville City Council and Duval County School Board district boundaries for the 2020 decennial census term." Doc. 132-1 at 3 (Court Approved Settlement). The Court

3

subsequently entered final judgment in the matter, approving the parties' agreement, dismissing the matter, and ordering the Clerk of the Court to close the file. Final Judgment at 2-3. The Court nonetheless retained limited jurisdiction to enforce the terms of the agreement, and to adjudicate Plaintiffs' Motion now before the Court. *Id.*

In the instant Motion, Plaintiffs assert they "are suffering immense constitutional harm" because SBDs 4 and 6 – and representatives elected to those districts in August 2022 – exist pursuant to racially gerrymandered lines drawn by the Council in 2011. Motion at 7.[2] Accordingly, they ask the Court to redeem this harm by ordering special elections in 2024 for SBDs 4 and 6.

In their Motion, Plaintiffs aptly describe the number of Duval County SBDs, how those districts are configured, the length of board member terms, and the staggered nature of the election cycle. Motion at 3-4. More particularly, should the Court grant Plaintiffs their requested relief, all SBDs will be up for election during the 2024 elections, but for SBD2. *See* Ex. 1. at ¶ 4 (Carney Dec.); *See* Ex. 2 at ¶19 (Willie Dec.). At present, April Carney is the elected representative for SBD2, serving her first term. Carney Dec. at ¶ 2. Darryl Willie is the elected representative for SBD4, serving his second term,

---

[2] Plaintiffs also suggest that the racial gerrymandering existed as early as 1991. Motion at 10. It is not entirely clear, therefore, if they are alleging their injury occurred in 1991, 2011, or August of 2022. *See Doe, as next friend on behalf of Doe #6 v. Swearingen*, 51 F.4th 1295, 1303-07 (11th Cir. 2022) (discussing date of injury for statute of limitations purposes).

4

for which he ran unopposed. *See* Willie Dec. at ¶¶ 2, 6. Finally, Charlotte D. Joyce is the elected representative for SBD6, also serving her second term. *See* Ex. 3 at ¶¶ 2-3 (Joyce Dec.).

## II.   RELEVANT LAW

When a party requests that a court order special elections to remedy a racial gerrymandering claim, the court should consider what is necessary, fair, and workable. *Covington*, 581 U.S. at 488. Balancing both individual and collective interests, a court should evaluate "the severity and nature of the particular constitutional violation, the extent of the likely disruption to the ordinary processes of governance if early elections are imposed, and the need to act with proper judicial restraint when intruding on state sovereignty." *Id.*

Of equal importance, "[t]he jurisdiction of federal courts is defined and limited by Article III of the Constitution," curtailing the courts' power to address only "cases" and "controversies." *Flast*, 392 U.S. at 94–95; *see also Lujan v. Defs. of Wildlife,* 504 U.S. 555, 559 (1992); *Bourdon v. U.S. Dep't of Homeland Sec.*, 940 F.3d 537, 546 (11th Cir. 2019); *Coker v. Warren*, No. 3:22-CV-518-MMH-LLL, 2023 WL 2330666, at *2 (M.D. Fla. Mar. 2, 2023). "Grounded in 'concern about the proper—and properly limited—role' of an 'unelected, unrepresentative judiciary' in our democratic society," the case and controversy requirement imposes "fundamental limits on federal judicial

5

power." *Alumni Cruises, LLC v. Carnival Corp.*, 987 F. Supp. 2d 1290, 1299 (S.D. Fla. 2013) (citing *Allen v. Wright*, 468 U.S. 737, 750 (1984)).

"The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Steel Co. v. Cit. for a Better Env't*, 523 U.S. 83, 94-95 (1998) (internal citations and alterations omitted).

> The power of a judicial decree rests neither in the power of the purse nor the sword, but in the integrity of its source. The vigilance of the judiciary in confining the scope of its authority to the constitutional grant embodied in Article III is one aspect of the foundation of that power.

*U.S. v. Bogle*, 689 F. Supp. 1121, 1140 (S.D. Fla. 1988). "If jurisdiction is absent, then [the courts] are without power to proceed. Indeed, courts have no business deciding legal disputes or expounding on law in the absence of such a case or controversy." *Diamond State Ins. Co. v. Boys' Home Ass'n, Inc.*, No. 3:13-CV-457-J-34PDB, 2014 WL 4626597, at *3 (M.D. Fla. Sept. 16, 2014) (internal citations and quotations omitted). "For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act *ultra vires*." *Steel Co.* 523 U.S. at 101–02.

Resting upon the bedrock case and controversy requirement is the "irreducible minimum" that a plaintiff also demonstrate standing. *Valley Forge Christian College v. Am. United for Sep. of Church & State*, 454 U.S. 464,

472 (1982); *Lujan,* 504 U.S. at 560-61; *Am. C.L. Union of Fla., Inc. v. Dixie Cty., Fla.*, 690 F.3d 1244, 1248 (11th Cir. 2012). Therefore, the plaintiff bears the burden of establishing "(1) that he has suffered an actual or threatened injury, (2) that the injury is fairly traceable to the challenged conduct of the defendant, and (3) that the injury is likely to be redressed by a favorable ruling." *Fla. Right to Life, Inc. v. Lamar*, 273 F.3d 1318, 1322 (11th Cir. 2001).

In light of the foregoing, the Court lacks jurisdiction to address Plaintiffs' request and their claim lacks merit. As such, it is neither necessary, fair, nor workable for the Court to provide Plaintiffs' requested relief. *Covington*, 581 U.S. at 488. For these reasons, the Court should deny Plaintiffs' Motion.

### III. ARGUMENT

#### A. The Court Does Not Have Jurisdiction to Grant Plaintiffs' Requested Relief

Plaintiffs suggest the lines drawn by the Council in 2011 violate the Fourteenth Amendment, and that the August 2022 School Board elections under those lines are equally suspect. Motion at 4-6, 7-9. Regardless of whether Plaintiffs' assertions have merit, the Court lacks jurisdiction to grant their requested relief.

The Constitution limits the judicial power of the federal courts to cases and controversies. *See* U.S. CONST., art. III, § 2. This requirement serves to "limit the business of federal courts to questions *presented* in an adversary

7

context . . . ." *Flast*, 392 U.S. at 95 (emphasis added). Without a presented case or controversy a court lacks power to act, and proceeding otherwise violates the Constitution. *See Steel Co.*, 523 U.S. at 94–95, 101-02; *Diamond State Ins. Co.*, 2014 WL 4626597 at *3; *Bogle*, 689 F. Supp. at 1140. By asking the Court to redeem injuries Plaintiffs allege relate to district lines drawn in 2011, Plaintiffs request the Court to proceed unconstitutionally and to act *ultra vires*. *Steel Co.*, 523 U.S. at 101–02.

At no point in this litigation – until now – have Plaintiffs presented a claim that they are seeking relief for injuries associated with the 2011 lines or the August 2022 School Board elections. Plaintiffs were aware however, of City election cycles and which lines would be used for which elections. PI Motion at 2, n.3; PI Order at 126 n. 68. They nonetheless have never contended that the August 2022 elections were problematic. While Plaintiffs did raise arguments in their PI Motion regarding the legality of prior redistricting cycles, they did so to counter Defendants' defense that the 2022 lines were drawn for the purposes of "core preservation," rather than to assert a claim of injury in and of itself. *See* PI Motion at 6, 15-16; Doc. 43 at 3, 10 (PI Reply).

Likewise, at no point have Plaintiffs presented the Court with an opportunity to issue a ruling that the 2011 district lines were unconstitutional. Of course, the Plaintiffs' argument for preliminary injunctive relief, and the Court's granting of the same, relied in part, on past redistricting processes,

8

including that from 2011. *See* PI Motion at 6, 15-16; PI Reply at 3, 10; PI Order at 23-28, 102-03, 107-08. However, the Court, in citing to and examining that history, did not issue a legal ruling regarding the 2011 lines. Certainly, the Court sharply critiqued the 2011 process, PI Order at 23-28, 102-03, 107-08, but it qualified its comments, noting it considered the "2011 historical evidence only to the extent it gives rise to inferences regarding the intent of the City Council in 2022." *Id.* at 104; *see also id.* at 100, 103. In issuing relief to Plaintiffs, the Court indicated its focus was on a "new harm – the maps enacted in 2022, and the harms posed by those maps" if used in the March 2023 elections. *Id.* at 129. Plaintiffs, therefore, have not presented the Court with a case and controversy regarding the 2011 lines, nor should the Court entertain those claims now. *Steel Co.*, 523 U.S. at 94–95, 101-02; *Flast*, 392 U.S. at 95; *Diamond State Ins. Co.*, 2014 WL 4626597 at \*3; *Bogle*, 689 F. Supp. at 1140.

Plaintiffs also lack standing to request the Court order special elections. *Fla. Right to Life, Inc.*, 273 F.3d at 1322 (detailing standing elements). As relevant here, the redressability requirement of standing asks "whether the injury that a plaintiff alleges is likely to be redressed through the litigation." *Falls v. DeSantis*, 609 F. Supp. 3d 1273, 1282–83 (N.D. Fla. 2022) (citations omitted). Courts must be able to "ascertain from the record whether the relief requested is likely to redress the alleged injury," and if not, courts lack "jurisdiction to entertain the" request. *Hollywood Mobile Estates Ltd. v.*

9

*Seminole Tribe of Fla.*, 641 F.3d 1259, 1266 (11th Cir. 2011). *See also Lewis v. Gov. of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019); *I.L. v. Ala.*, 739 F.3d 1273, 1281 (11th Cir. 2014). Plaintiffs' Complaint does not indicate special elections for SBDs 4 and 6 will cure the underlying injury for which they sought relief.

Plaintiffs' Complaint focused on the March 2022 redistricting cycle and elections that might occur under the map produced in that process, specifically in March 2023. In particular, Count I alleged the Council, when enacting the March 2022 district lines, violated the Fourteenth Amendment by racially gerrymandering Districts 2, 7, 8, 9, 10, 12 and 14. Complaint at ¶¶ 261-269. As a result, SBDs 4, 5, and 6, also represented racial gerrymanders. Plaintiffs asked the Court to declare the challenged districts unlawful, enjoin Defendants from using the March 2022 map, and if adequate relief was not otherwise available, hold special elections in the challenged districts. *Id.* at 65.

Plaintiffs now belatedly ask the Court to order special elections for SBDs 4 and 6. Special elections, however, will not redress the injury alleged in their Complaint. *See generally Lewis*, 944 F.3d at 1301; *I.L.*, 739 F.3d at 1281; *Hollywood Mobile Estates Ltd.*, 641 F.3d at 1266. The Complaint focused on injuries resulting from the March 2022 lines, and sought to ensure those lines were not used in future Jacksonville elections. Complaint at ¶¶ 261-69; PI Motion at 1; Remedial Brief at 2-3. Hence, whatever injuries Plaintiffs presently raise regarding the 2011 lines or the August 2022 elections that

10

occurred thereunder, those harms were not caused by the map the Council drew in March of 2022. No elections have occurred under that map.

Indeed, Plaintiffs obtained remedies curing the injuries alleged in the Complaint as related to the March 2022 map. The Court declared that map unconstitutional, enjoined the Defendants from holding elections pursuant to the lines contained therein, and ordered the Defendants to use a different map pending final judgment.[3] *See* PI order at 137; Remedial Order at 58. Likewise, the Court approved the parties' settlement adopting P3 as the district map. *See* Order Approving Settlement; Final Judgment.

The relief Plaintiffs request in the instant Motion is not aligned to cure the harms alleged in their Complaint. *Lewis*, 944 F.3d at 1305 ("Plaintiffs cannot demonstrate that the relief they seek would . . . . significantly increase the likelihood" of redressing their asserted injury): *I.L.*, 739 F.3d at 1281 ("we must consider the requested relief in the context of the injury that it purports to redress"). Rather, Plaintiffs' remedy addresses their newly asserted injuries associated with the 2022 elections and the 2011 lines. The relevant harm before the Court, however, is the racial gerrymandering claim associated with the Council's March 2022 district lines, a harm that has been redressed.

---

[3] In their Complaint, Plaintiffs did include a prayer for special elections. However, that request was conditional "should adequate relief be unavailable prior to the next regularly scheduled elections." Complaint at 65. Because Plaintiffs obtained adequate relief in the preliminary injunction proceedings, there was no need for special elections.

11

Plaintiffs have not presented the Court with a case and controversy to address the harms raised in their Motion. Nor do they have standing to seek the relief requested therein. It the absence of the constitutionally required jurisdiction to entertain Plaintiffs' newly raised claims, it is not necessary, fair, or workable for the Court to consider their request. *Covington*, 581 U.S. at 488. The Court should therefore deny Plaintiffs' Motion.[4]

### B. Plaintiffs Cannot Raise a New Claim in the Motion

On May 30, 2023, the Court entered judgment dismissing this case pursuant to Federal Rule of Civil Procedure 41(a)(2). *See* Order Approving Settlement; Final Judgment. Plaintiffs now appear to ask the Court to reopen the case so they can assert a new claim against Defendants and seek relief. Plaintiffs, however, have not articulated grounds to warrant such action.

Courts consistently hold that should a plaintiff seek to assert new legal claims or theories against a defendant, the plaintiff must do so in an amended complaint, rather than in responsive motions or other filings. *See, e.g.*, *First English Evan. Lutheran Church of Glendale v. Cty. of Los Angeles*, 482 U.S. 304, 313 n.7 (1987); *E.E.O.C. v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1030 n.5 (11th Cir. 2016); *Herring v. Sec'y Dep't of Corr.*, 397 F.3d 1338, 1342 (11th

---

[4] When the Court approved the parties' settlement agreement, neither the Court nor Defendants knew the legal basis of Plaintiffs' request for special elections. The Court's reservation of jurisdiction to address Plaintiffs' Motion cannot cure that Plaintiffs' current request places the Court outside the Constitution's jurisdictional limits.

Cir. 2005); *LeBlanc v Unifund CCR Partners, G.P.*, 552 F. Supp. 2d 1327, 1336 n.6 (M.D. Fla. 2008). Plaintiffs have presented nothing to the contrary.[5]

Nor have Plaintiffs suggested that the Federal Rules provide them with the means to re-open this otherwise closed case so that they could assert a new claim against Defendants and seek additional relief. *See, e.g.*, *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) ("[A] Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment."); FED. R. CIV. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment); FED. R. CIV. P. 60(b) (detailing grounds for which a party may seek relief from a judgment or order). Hence, the Court should reject Plaintiffs' attempt to amend their Complaint.

### C. Plaintiffs' Request for Relief Cannot Succeed on the Merits

Even if considered on the merits, the Court should reject Plaintiffs' Motion. Stemming from the arguments above, *see supra* § III.A, Plaintiffs have not properly presented this Court with the opportunity to evaluate "the severity and nature of the particular constitutional violation" raised in their

---

[5] Plaintiffs' delayed attempt to add a new claim to their action may also be subject to laches. *See, e.g.*, *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1283 (11th Cir. 2015) (discussing laches defense); *see also White v. Daniel*, 909 F.2d 99, 102-03 (4th Cir. 1990) (accepting laches argument in redistricting litigation); *Fouts v. Harris*, 88 F. Supp. 2d 1351, 1353-56 (S.D. Fla. 1999) (same); *Lopez v. Hale Cty., Tex.*, 797 F. Supp. 547, 550 (N.D. Tex. 1992) (same).

Motion. *Covington*, 581 U.S. at 488. Plaintiffs have neither presented the Court with case and controversy at issue in their Motion, nor do they have standing to seek the relief they are presently requesting from the Court. *See supra* § III.A. Accordingly, in the instant procedural posture, the Court has not been presented with a constitutional violation to evaluate. Additionally, Plaintiffs' request for special elections will disrupt the ordinary processes of municipal governance, engender voter confusion, and infringe upon the City's sovereignty. *See generally Covington*, 581 U.S. at 488.

The Duval County School Board (Board) will suffer disruption should the Court grant Plaintiffs' request. The Board completes its core work during the summer months to prepare for the new school year. It meets multiple times a month, updating and executing relevant contracts, making curriculum changes, and formulating district wide budgets. This work requires Board members to spend significant time preparing and reviewing materials. *See* Carney Dec. at ¶¶ 7-8; Willie Dec. at ¶ 13; Joyce Dec. at ¶¶ 8-9.

If the Court orders special elections for SBDs 4 and 6 to coincide in 2024 with the regularly scheduled elections for SBDs 1, 3, 5, and 7, potentially all but one Board seat will be up for election. *See* Carney Dec. at ¶¶ 2, 6. Hence, during the period when the Board is engaged in some of its most vital preparation for the impending school year, a majority of its members must split their time between Board and campaign duties. *See* Carney Dec. at ¶ 10; Willie

14

Dec. at ¶¶ 13-14; Joyce Dec. at ¶¶ 8-9. Moreover, campaigning for office is expensive and time-consuming. *See* Carney Dec. at ¶ 9; Willie Dec. at ¶ 13; Joyce Dec. at ¶¶ 10-14. It takes Board members away from the time they would otherwise spend preparing for meetings, and undermines their ability to respond timely and efficiently to constituents. *See* Carney Dec. at ¶ 9; Willie Dec. at ¶¶ 13-14; Joyce Dec. at ¶ 20.

Pursuant to the Florida Constitution, Board members serve staggered terms. *See* FLA. CONST. art. 9, § 4(a). This structure serves, in part, to safeguard consistency in leadership, preserve institutional knowledge, and ensure the Board can address the issues before it, even while some of its members must spend time seeking reelection. *See In re Apport. Law SJR 1E*, 414 So. 2d 1040, 1054 (Fla. 1982) (Boyd J., concurring); Willie Dec. at ¶ 18. Plaintiffs' proposal could violate this constitutional mandate. Special elections could disrupt the work of the Board, as a majority of its members will be campaigning during the summer of 2024. A special election would unnecessarily take Board members away from their work, while also potentially threatening to disrupt the consistency in leadership fostered by staggered terms and violate the Florida Constitution. Ultimately, the Board's services to the City's near 127,000 students, their parents, and the entire citizenry of Jacksonville, could be compromised. *See* Carney Dec. at ¶ 10; Willie Dec. at ¶¶ 3, 20; Joyce Dec. at ¶ 21.

15

Plaintiffs also assert that special elections occurring over fourteen months from now will minimize intrusion into government functions. Motion at 12. Defendants reject how Plaintiffs frame this incursion. Rather, Plaintiffs are essentially asking the Court to undo the August 2022 elections; strip voters of the representatives they picked in an unchallenged selection process; and force two duly elected representatives to run again for seats they already won. Other courts have rejected similar redistricting challenges. *See, e.g. White*, 909 F.2d at 102-03; *Fouts*, 88 F. Supp. 2d at 1353-56; *Lopez*, 797 F. Supp. at 550.

Special elections would also disrupt the Supervisor of Elections (SOE). Should the SOE have to add a special election in 2024, staff members will have to enter additional data into the election management system and ensure that the ballot styles for the relevant precincts accurately include the additional races. *See* Ex. 4 at ¶¶ 5-10 (Gicalone Dec.). Additionally, placing extra names on the ballot style as a result of a special election may increase the ballot to an additional page, costing up to $200,000. *See* Gicalone Dec. at ¶¶ 11-19.

Similarly, special elections will cause voter confusion. Informed voters who participated in the August 2022 elections likely understood they were selecting a Board member for a four-year term. Hence, in 2024 voters may legitimately wonder why they must vote again. Likewise, residents in SBD2 may query why, unlike the rest of the City, they are not voting for a Board member. Moreover, Willie and Joyce note that had they known they would

16

have to run again in 2024, they would have campaigned differently in 2022, educating their constituents to expect them to return to make the case for why they should be entitled to fulfill the entirety of their terms. *See* Willie Dec. at ¶¶ 15-17; Joyce Dec. at ¶ 14-19. They now, however, face the prospect of revisiting those constituents, and explaining why, even after having duly won their seats, they must again ask for support. *See* Willie Dec. at ¶¶ 15-17; Joyce Dec. at ¶ ¶ 14-19.[6]

Plaintiffs' disenfranchisement argument is a distraction. Motion at 13-15. Temporary disenfranchisement following redistricting, in and of itself, does not constitute an injury warranting court intervention, and is often a natural consequence of the redistricting process. *See, e.g.*, *Repub. Party of Oregon v. Keisling*, 959 F.2d 144, 145-56 (9th Cir. 1992); *Rice v. Williams*, No. 6:06-cv-341, 2007 WL 2064695, at *9 (E.D. Tex. July 17, 2007); *Farrell v. State of Okla., ex rel. Hall*, 339 F.Supp. 73, 82 (W.D. Okla. 1972); *Pate v. El Paso Cty., Tex.*, 337 F. Supp. 95, 96 (W.D. Tex. 1970).

---

[6] It is not entirely settled, whether, pursuant to *Board of Regents v. Roth*, 408 U.S. 564 (1972), Florida law creates in elected officials a property interest entitled to due process protections. The Florida Supreme Court has held that while "a public office is a public trust, . . . the incumbent has to some extent a recognizable property right in it." *State v. Tedder*, 143 So. 148, 150-51 (Fla. 1932). While that holding has been subject to judicial questioning, *see Israel v. DeSantis*, No. 4:19-cv576, 2020 WL 2129450, at *9 (N.D. Fla. May 5, 2020), *Tedder* remains controlling law in Florida. *But see Coker*, 2023 WL 2330666 (M.D. Fla. 2023). Regardless of the unsettled nature of this matter, Plaintiffs' requested remedy requires that two duly elected Board members must now re-run for seats they otherwise won in an election that has never been challenged. It additionally may impact the rights of two individuals who are not a party to this litigation.

Equally distracting is Plaintiffs' suggestion that special elections are appropriate because Florida voters are familiar with truncated terms. Motion at 13-15. The State of Florida constitutionally mandates that senatorial terms will be truncated and subject to re-election following the redistricting process. *See* FLA. CONST. art. 3, § 15(a); *In re Apport. Law, SJR 1176*, 83 So.3d 597, 658-59 (Fla. 2012); *In re Apport. Law SJR IE*, 414 So.2d at 1048-49. The Florida Constitution, however, is silent regarding school board members. *See* FLA. CONST. art. 9, § 4(a). In the midst of that silence, the Jacksonville City Charter and Ordinance Code detail that following redistricting, new lines will only be applied to School Board elections which occur "at least nine months after the redistricting." JACKSONVILLE ORD. CODE § 18.110; § 13.03 JACKS. CHARTER. Likewise, the Charter details the appropriate circumstances for SBD special elections, and does not reference special elections after redistricting. § 13.05 JACKS. CHARTER. *See also Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1257-58 (11th Cir. 2022) (discussing when local ordinances are not preempted by state law); *D'Agastino v. City of Miami*, 220 So.3d 410, 420-23 (Fla. 2017) (same). Hence, while Florida voters may be familiar with truncated terms for their senators, that familiarity is not sufficient to justify the Court, in the absence of a properly presented case and controversy before it, to command the City to violate the terms of its Charter and Ordinance Code. Doing so would not only confuse the voters, but also unduly infringe upon the

18

City's sovereignty. *See generally Covington v. North Carolina*, 270 F. Supp. 3d 881, 894-896 (M.D. N.C. 2017).

Finally, much of Plaintiffs' cited case law, while accurate for the broad propositions asserted, is misapplied. Defendants do not contest that "individuals . . . whose constitutional rights have been injured by improper racial gerrymandering have suffered significant harm. Those citizens are entitled to vote as soon as possible for their representatives under a constitutional apportionment plan." Motion at 1 (citing cases). However, in many of those cited cases, the courts did not order special elections. Neither should this Court. Likewise, special elections can certainly be an appropriate remedy for racially gerrymandered districts. *See* Motion at 18. However, in the cases cited by Plaintiffs, courts ordered special elections to remedy harms properly presented to those judicial bodies in accordance with the Case and Controversy requirements of Art. III of the Constitution. Not so here.

## IV. CONCLUSION

Plaintiffs ask the Court to act without jurisdiction and in violation of the foundational boundaries laid out in the Constitution. They have never presented the Court with the specific case and controversy for which they now seek relief, and lack standing to request the Court to issue special elections for SBDs 4 and 6. Nor does their substantive case have merit.

For the foregoing reasons, Defendants respectfully request the Court to **DENY** Plaintiffs' Motion.

Respectfully submitted this 28th day of July, 2023.

| HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK<br><br>**Mohammad O. Jazil** (FBN 72556)<br>mjazil@holtzmanvogel.com<br>zbennington@holtzmanvogel.com<br>**Michael Beato** (FBN 1017715)<br>mbeato@holtzmanvogel.com<br>zbennington@holtzmanvogel.com<br>119 South Monroe Street, Suite 500<br>Tallahassee, FL 32301<br>(850) 270-5938<br><br>**Jason Torchinsky** (Va. BN 47481)<br>(D.C. BN 976033)<br>jtorchinsky@holtzmanvogel.com<br>HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK<br>15405 John Marshall Hwy<br>Haymarket, VA 20169<br>(540) 341-8808 | OFFICE OF GENERAL COUNSEL CITY OF JACKSONVILLE<br><br>*/s/ Mary Margaret Giannini*<br>**Mary Margaret Giannini**<br>Assistant General Counsel<br>Florida Bar No. 1005572<br>MGiannini@coj.net; SStevison@coj.net<br>**Helen Peacock Roberson**<br>Assistant General Counsel<br>Florida Bar No.: 0016196<br>HRoberson@coj.net;<br>CStephenson@coj.net<br>117 West Duval Street, Suite 480<br>Jacksonville, FL 32202<br>Phone: (904) 255-5100<br>Facsimile: (904) 255-5120 |

*Attorneys for Defendants, City of Jacksonville and Mike Hogan, in his official capacity as Duval County Supervisor of Elections*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of July, 2023, a copy of this document was filed electronically through the CM/ECF system and furnished by email to all counsel of record.

*/s/ Mary Margaret Giannini*
*Counsel for Defendant*