## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

JACKSONVILLE BRANCH
OF THE NAACP, et al.,

   Plaintiffs,

           Case No. 3:22-cv-493-MMH-LLL

vs.

CITY OF JACKSONVILLE, et al.,

   Defendants.

_____/

## O R D E R

**THIS CAUSE** is before the Court on Plaintiffs' Motion to Order Special

Elections for Duval County School Board Districts 4 and 6 (Doc. 134; Motion),

filed on June 27, 2023.[1]   In the Motion, Plaintiffs ask the Court to "exercise its

equitable power and discretion to order special elections in Duval County School

Board Districts 4 and 6, to coincide with the regularly scheduled elections for

School Board Districts 1, 3, 5, and 7."   See Motion at 1.   Those elections are

set to take place in August of 2024.   Defendants City of Jacksonville and Mike

Hogan  in  his  official  capacity  as  Duval  County  Supervisor  of  Elections

---

[1] Following approval of the parties' settlement agreement, see Order (Doc. 131), the
Court entered Final Judgment (Doc. 132) in this action on May 30, 2023.  At the request of
the parties, the Court exercised its discretion to retain jurisdiction to consider this Motion.
See Final Judgment at 2-3, Attach. 1 at 3-4.

(collectively, the City) filed a response in opposition to the Motion on July 28, 2023.  See Defendants' Response in Opposition to Plaintiffs' Motion to Order Special Elections for Duval County School Board Districts 4 and 6 (Doc. 137; Response).  At the direction of the Court, see Endorsed Order (Doc. 138), Plaintiffs filed a reply in support of the Motion on September 1, 2023.  See Plaintiffs' Reply in Support of their Motion to Order Special Elections (Doc. 141; Reply).  Accordingly, this matter is ripe for review.

## I.    Background[2]

In March of 2022, following the decennial federal census, the City Council passed Jacksonville Ordinance 2022-01-E which established new district maps for the City Council and Duval County School Board (the Enacted Plan).  Soon thereafter, Plaintiffs filed this lawsuit challenging the Enacted Plan as unconstitutional.  See Complaint (Doc. 1), filed May 3, 2022.[3]  Plaintiffs alleged that certain of the City Council and Duval County School Board districts established in Ordinance 2022-01-E were racial gerrymanders in violation of the Equal Protection Clause (the Challenged Districts).  See Complaint at 62-

---

[2] The Court presumes the reader's familiarity with the Court's prior Orders granting a preliminary injunction and directing the implementation of an interim remedy.  See Order (Doc. 53; Preliminary Injunction Order) entered October 12, 2022; Order (Doc. 101; Remedial Order) entered December 19, 2022.  The Court adopts the defined terms used in those Orders.

[3] Plaintiffs also alleged that the Challenged Districts violated the City Charter.  See Complaint at 64.  However, the Court did not have occasion to reach that claim prior to the settlement of this lawsuit.

63.   Plaintiffs asked the Court to "[d]eclare the City Council Districts 2, 7, 8, 9, 10, 12, and 14 <u>adopted in Ordinance 2022-01-E</u> to be unconstitutional in violation of the Fourteenth Amendment," make the same declaration as to "School Board Districts 4, 5, and 6 <u>adopted in Ordinance 2022-01-E</u>," and "[p]reliminarily and permanently enjoin Defendants and their agents from calling, holding, supervising, or certifying any elections in the Challenged Districts <u>as defined in Ordinance 2022-01-E</u> . . . ." <u>See</u> Complaint at 65 (emphasis added).   Plaintiffs further requested that the Court "[o]rder Defendants to hold special elections in the Challenged Districts <u>as defined in Ordinance 2022-01-E</u> to limit the harm to Plaintiffs should adequate relief be unavailable prior to the next regularly scheduled elections . . . ." <u>Id.</u> (emphasis added).   Plaintiffs also included a catchall request for "any and all other relief this Court deems just and proper." <u>Id.</u> at 66.

On July 22, 2022, Plaintiffs filed a motion for preliminary injunction. <u>See</u> Plaintiffs' Motion for Preliminary Injunction (Doc. 36; Injunction Motion). In the Injunction Motion, Plaintiffs asked the Court to enjoin "Defendants from conducting any future elections using the Jacksonville City Council and Duval County School Board districts <u>enacted in Ordinance 2022-01-E</u> . . . . ." <u>See</u> <u>id.</u> at 1 (emphasis added).   Plaintiffs stated that the Enacted Plan "will first be used in the March 2023 City Council elections and the 2024 School Board elections," <u>id.</u> at 8, and argued that there was sufficient time in advance of those

elections to implement a remedial map. <u>See generally</u> Plaintiffs' Remedies Brief (Doc. 39).

In the Injunction Motion, Plaintiffs raised no arguments or challenges regarding the upcoming regularly scheduled election for School Board Districts 4 and 6. As such, the election for those School Board districts went forward in August of 2022 without challenge. In accordance with the provisions of the City Code, the Enacted Plan did <u>not</u> apply to the August 2022 election. Rather that election proceeded on the basis of the pre-existing map enacted in 2011 (the 2011 Plan). This was proper because the City Code specifies that following any redistricting the new plan will not apply until "the next School Board election which occurs at least nine months after the redistricting." <u>See</u> Jacksonville Ordinance Code § 18.110 ("Any redistricting of School Board districts shall not affect any term of office in existence at the time the redistricting becomes effective, but shall be applicable at the next School Board election which occurs at least nine months after the redistricting."). Because the Enacted Plan took effect in March of 2022, less than nine months prior to the August 2022 School Board election, that election proceeded on the 2011 Plan. And, Plaintiffs did not address the 2011 Plan or the August 2022 School Board election in their Complaint, Injunction Motion, or Remedies Brief.

On October 12, 2022, the Court entered an Order granting the Injunction Motion and preliminarily enjoining the City from "conducting any elections

using the Jacksonville City Council and Duval County School Board districts enacted in Ordinance 2022-01-E, until entry of a final judgment in this case." See Order (Doc. 53; Preliminary Injunction Order) at 137.   The Court then provided the City with the opportunity to enact new district lines ahead of the upcoming March 2023 election.   See id. at 136-37.   The City Council enacted a Remedial Plan on November 7, 2022, to which Plaintiffs objected.   On December 19, 2022, the Court entered an Order sustaining those objections. See Order (Doc. 101; Remedial Order) at 58.   In the Remedial Order, the Court determined that the City's Remedial Plan was an inadequate remedy because it "fail[ed] to correct the constitutional infirmity identified in the Preliminary Injunction Order . . . ."   See Remedial Order at 47.   Given the upcoming March 2023 election, the Court found it necessary to adopt an interim remedial plan and ultimately required the City to implement "the Court's Interim Remedial Plan in Jacksonville City Council and Duval County School Board elections, beginning with the regular 2023 Council and 2024 School Board elections and until entry of a final judgment in this case."   See Remedial Order at 58.   In March of 2023, the City held the regularly scheduled election for all City Council districts using the Court's Interim Remedial Plan.

Soon thereafter, the parties reached a settlement.   As part of their settlement, the parties agreed that the Court's Interim Remedial Plan would remain the City of Jacksonville's electoral map for the 2020 decennial census

term (the Settlement Plan).   <u>See</u> Joint Motion for Approval of Settlement Agreement (Doc. 128), filed May 12, 2023.   On May 30, 2023, the Court entered an Order (Doc. 131) approving the Settlement Agreement (Doc. 132-1),[4] and as requested by the parties, entered a Final Judgment (Doc. 132) in this case.   In accordance with the terms of the Settlement Agreement, the Court exercised its discretion to retain jurisdiction "to adjudicate Plaintiffs' potential motion to request that the Court order special elections for School Board Districts 4 and 6, to be held concurrent with the regular 2024 elections."   <u>See</u> Final Judgment at 2-3; Settlement Agreement at 4.   In doing so, the Court expressed no opinion as to the merits of such a motion or the propriety of any relief Plaintiffs might seek in that motion.   As contemplated by the Settlement Agreement, on June 27, 2023, Plaintiffs filed the instant Motion in which they ask the Court to truncate the terms of the School Board members representing Districts 4 and 6 and require a special election for those seats in August of 2024.

The Duval County School Board is comprised of seven elected School Board members.   Each member is elected to represent one of the seven School Board districts in Duval County and must reside in that district.   The School Board members hold staggered, four-year terms.   The last election for seats in the odd-numbered School Board districts, 1, 3, 5, and 7, occurred in 2020.

---

[4] Following a hearing with the parties and with their consent, the Court made a minor revision to the Settlement Agreement which is not relevant to the instant Motion.   <u>See</u> Order (Doc. 131) at 1-2.

Members holding seats in the even-numbered School Board districts, 2, 4, and 6, were elected in the August 2022 election discussed above.   Thus, at present, all sitting School Board members were elected based on the district lines adopted in 2011.   The Settlement Plan will be implemented for the first time in a School Board election during the regularly scheduled election for the odd-numbered seats in August of 2024.   The even-numbered School Board districts, however, are not due for an election until 2026.   As such, unless the Court orders relief, the 2026 election will be the first time the Settlement Plan is implemented for Districts 2, 4, and 6.[5]

## II.   Summary of the Arguments

Drawing on the Court's findings in the Preliminary Injunction Order, Plaintiffs contend that the boundaries of the School Board districts in the 2011 Plan on which the August 2022 election was conducted are substantially the same as those of the racially gerrymandered districts in the Enacted Plan which the Court enjoined.   See Motion at 4-6.   In support, Plaintiffs point to the Court's observation in the Preliminary Injunction Order that the district lines "'drawn in 2011 were reenacted in 2022 with only minor changes to the Challenged Districts.'"   See Motion at 4 (quoting Preliminary Injunction Order at 103); see also Preliminary Injunction Order at 88-89.   Plaintiffs also cite the

---

[5] The Settlement Plan makes only minimal changes to School Board District 2 and Plaintiffs do not seek a special election in this district.   See Motion at 16 n.14.   As such, the Court will not discuss School Board District 2 further.

Court's findings that the historical evidence of what occurred during the redistricting process in 2011 "unabashedly points to racial gerrymandering." See Motion at 5 (quoting Preliminary Injunction Order at 102); see also Preliminary Injunction Order at 23-28, 88-89.

Based on this evidence of racial gerrymandering, Plaintiffs assert that the Court should balance the three factors set forth in North Carolina v. Covington, 581 U.S. 486 (2017) to determine whether a special election for School Board Districts 4 and 6 is warranted to remedy this harm.   See Motion at 6.   These factors are: (1) the severity of the constitutional violation, (2) the extent to which requiring a special election will disrupt the ordinary process of governance, and (3) the need for judicial restraint when intruding on state sovereignty.   See Motion at 6-7 (citing Covington, 581 U.S. at 488).   As to the first factor, Plaintiffs contend that they are suffering "immense constitutional harm" and proceed to recount the harms that stem from racial gerrymandering as described in the Preliminary Injunction Order.   See Motion at 7; see also Preliminary Injunction Order at 123-25.   Plaintiffs point to the broad scope of the racial gerrymandering in Jacksonville—impacting seven of the fourteen City Council districts and three of the seven School Board districts, as well as the history of such gerrymandering dating back decades.   See Motion at 8-9.

As to the second factor, Plaintiffs contend that a special election will not cause a significant disruption because the special election can be conducted

alongside the regularly scheduled primary and general elections in August and November, and there is ample time for the candidates to prepare before the election.   <u>See</u> Motion at 11-12.   Plaintiffs further maintain that election administrators and voters in Florida are familiar with truncated terms following redistricting as this is what occurs with the Florida Senate.   <u>Id.</u> at 14.

In Plaintiffs' view, a special election will actually reduce confusion given the scope of the changes between the 2011 Plan and the Settlement Plan. Plaintiffs cite evidence showing that "36,420 people in District 4 have never had the chance to vote for or against their School Board representative" which equals 27% of District 4's population, and "42,698 people—or 30% of the population" in District 6 are "currently represented by an incumbent they have not been able to vote for or against."   <u>See</u> Motion at 16, Ex. 1: Expert Report of Anthony E. Fairfax on the Core Retention Tables for Duval County, FL School Board Districts (Suppl. Fairfax Report) ¶ 18.   And Plaintiffs observe that absent a special election it will be six years before any of the 72,306 residents moved from an odd-numbered district into an even-numbered district, including three named Plaintiffs, will be able to vote in a School Board election.   <u>See</u> Motion at 14-15; Suppl. Fairfax Report ¶¶ 18, 20.

As to the third <u>Covington</u> factor, Plaintiffs argue that a special election "is entirely consistent with judicial restraint."   <u>See</u> Motion at 17.   Plaintiffs

contend that "sovereignty is evaluated from the standpoint of the <u>electorate</u>," such that providing voters with the opportunity to choose their elected officials actually promotes sovereignty.   <u>Id.</u>   Plaintiffs also maintain that any inconvenience to the representatives or burden on the City does not outweigh the severe constitutional harm identified in this case.   <u>Id.</u> at 18-19.

In the Response, the City argues that the Court lacks jurisdiction to grant the relief requested because Plaintiffs did not seek relief for injuries associated with the 2011 Plan or the August 2022 School Board elections in the Complaint or at any prior point in this litigation.   <u>See</u> Response at 8.   The City acknowledges that the Court made preliminary factual findings regarding the 2011 district lines but asserts that the Court at no point made, or was asked to make, a ruling regarding the constitutionality of those lines.   <u>Id.</u>   Thus, the City maintains that Plaintiffs "have not presented the Court with a case and controversy regarding the 2011 lines . . . ."   <u>Id.</u> at 9.

Likewise, the City contends that Plaintiffs lack standing to seek this relief because it does not redress the injury alleged in the Complaint.   According to the City, in the Complaint Plaintiffs challenged the Enacted Plan which the City Council passed in March of 2022, and the harm that would occur if any elections were held using the district lines adopted in the Enacted Plan.   <u>Id.</u> at 10.   The City observes that given the Court's Preliminary Injunction Order and the subsequent settlement of this lawsuit, no elections have or will occur under

the Enacted Plan.  As such, the City maintains that a special election for School Board Districts 4 and 6 will not redress any harm identified in the Complaint.  Id. at 10-11.  In keeping with its contention that the relief requested is beyond the scope of the claims in the Complaint, the City characterizes Plaintiffs' request as a belated attempt to assert a new claim. See Response at 12.  The City maintains that Plaintiffs cannot raise a new claim through argument in the briefing and have not identified any legal authority permitting them to assert a new claim at this late stage in the proceedings.  Id. at 12-13.

In addition, the City argues that even if the Court considers the request on the merits, denial of the Motion is warranted.  Id. at 13. Reiterating its jurisdictional arguments, the City maintains that there is no constitutional violation properly before the Court to evaluate.  Id. at 14.  As to the potential for disruption, the City presents declarations from School Board members explaining that a special election would interfere with the work of the School Board which "completes its core work during the summer months to prepare for the new school year."  Id. at 14, Exs. 1-3.  According to the City, a special election "could disrupt the work of the Board, as a majority of its members will be campaigning during the summer of 2024."  Id. at 15.  The City also observes that School Board members serve staggered terms under the Florida Constitution, which serves, in part, "to safeguard consistency in leadership,

preserve institutional knowledge, and ensure the Board can address the issues before it, even while some of its members must spend time seeking reelection." Id. (citing Fla. Const. art. 9, § 4(a)).   As such, the City argues that a special election "potentially threaten[s] to disrupt the consistency in leadership fostered by staggered terms and violate the Florida Constitution."   Id.

The City also contends that a special election will intrude on government functions because it will "undo the August 2022 elections; strip voters of the representatives they picked in an unchallenged selection process; and force two duly elected representatives to run again for seats they already won."   Id. at 16.   The City points to additional burdens and costs placed on the Supervisor of Elections and the potential for voter confusion.   Id. at 16-17, Ex. 4.   With respect to Plaintiffs' argument concerning the disenfranchisement of voters, the City contends that such temporary disenfranchisement following redistricting "does not constitute an injury warranting court intervention, and is often a natural consequence of the redistricting process."   Id. at 17.   And the City points to the City Code which provides that new district lines following a redistricting take effect at the next election which occurs "at least nine months after the redistricting."   Id. at 18.   In the City's view, requiring the City to violate the terms of its City Code by holding a special election "would not only confuse voters, but also unduly infringe upon the City's sovereignty."   Id. at 18-19.

In filing the Motion, Plaintiffs did not explain why they were seeking a special election for the August 2022 School Board seats for the first time only after the Court had entered judgment in this case.   Nor did they explain how a special election for those School Districts would remedy the constitutional violation arising from the Enacted Plan which they challenged in the Complaint.   As such, the Court directed Plaintiffs to file a reply brief addressing the arguments raised by the City in regard to these issues.

In the Reply, Plaintiffs argue that the Court has jurisdiction to order a special election because the Court's equitable discretion is not limited to only relief that redresses the injury "in the narrowest ways."   See Reply at 2. Plaintiffs liken the relief they seek here to the Court's order waiving the residency requirement prior to the March 2023 election.   Id.   As with that relief, Plaintiffs contend that the Court has jurisdiction "to issue an Order that effectuate[s] its other orders and [is] part of a remedy appropriate for the specific facts of this case."   Id. at 2.   Plaintiffs also point to other redistricting cases where a plaintiff has succeeded in showing violations with regard to one or two districts and the court has found it appropriate to order a special election as to all districts.   Id. at 3.   According to Plaintiffs, the Court has "broad equitable discretion" to fashion a remedy in this context, especially given the public interest involved.   Id. at 5.

For the first time in the Reply, Plaintiffs characterize the relief they request as a means of effectuating the Court's Preliminary Injunction Order. Id. at 6. They point to the "tens of thousands of voters" who will not have the opportunity to vote on the incumbents absent a special election and assert that "special elections effectuate the Court's orders to use [the Court's Interim Remedial Plan] and ensure full relief in addition to—and in service of—curing past gerrymanders." Id. at 6. Plaintiffs contend that curing the decades-long racial gerrymandering led to "more drastic changes than is ordinary" following a redistricting cycle such that citizens will be confused about who represents them. See Reply at 7 (citing Navajo Nation v. San Juan Cnty., No. 2:12-cv-39, 2017 WL 6547635, at *18 (D. Utah Dec. 21, 2017)). In Plaintiffs' view, "[a]n order setting special elections is necessary to fully effectuate the use of [the Court's Interim Remedial Plan] by ensuring that as soon as practicable, voters live and vote in—and are represented by School Board members elected from—non-racially gerrymandered districts." Id.

Plaintiffs also note that the first School Board elections following the decennial redistricting process are ordinarily conducted on the newly adopted maps. This did not occur in 2022, however, due to the delay in the release of the 2020 Census data and the City Council's decision not to accelerate the redistricting process. Id. at 8. Plaintiffs maintain that "[u]nder these circumstances, the Court has a strong equitable interest in minimizing

confusion about representation and accountability and ordering that [the Court's Interim Plan] be fully implemented." Id. In Plaintiffs' view, this falls within the "adequate relief" they sought in the Complaint. Id. [6] Last, Plaintiffs reject Defendants' characterization of their Motion as attempting to raise a new claim and assert that the Court "explicitly maintained" the power to order a special election "when it retained jurisdiction to enforce the settlement agreement." Id. at 10.

### III.   Discussion

As a preliminary matter, the Court notes that by granting the parties' request to retain jurisdiction over this case to consider Plaintiffs' yet-to-be-filed motion for a special election, the Court made no finding regarding the merits of such a motion or the propriety of filing such a motion. Indeed, the Court could not have made any determination because the parties gave the Court no insight as to the legal or procedural basis of the motion, the reason it would be filed post judgment, or the position of the parties on the availability of the relief sought or the propriety of the Court granting it. Those issues were left to be addressed in the parties' briefing which they have now done. Thus, the fact that, at the parties' joint request, the Court exercised its discretion to adjudicate

---

[6] Notably, Plaintiffs do not contend that the Redistricting Committee acted in bad faith or in any way improperly when it decided not to expedite the redistricting process for purposes of the August 2022 election. And although Plaintiffs have undoubtedly been aware of this decision for some time, they did not raise any concerns about it at any prior stage in these proceedings.

the instant Motion does nothing to address the parties' conflicting positions on the propriety of Plaintiffs' request for the relief sought here.

Upon review of the Motion and record in this case, the Court finds that Plaintiffs' request for a special election concerning School Board Districts 4 and 6 is due to be denied. Significantly, Plaintiffs did not bring any claim concerning the August 2022 School Board election or the 2011 Plan in the Complaint. Thus, the relief Plaintiffs seek exceeds the scope of Plaintiffs' claims and the remedies available in this case. And regardless, having settled this lawsuit without an admission of liability or a final determination on the merits, and agreed to the entry of final judgment, Plaintiffs cannot obtain any further relief at this time. Regardless of the merit of Plaintiffs' desire for a special election, the request for such relief in this action at this stage of the proceedings is improper.

In the Motion, Plaintiffs ask the Court to order a special election and argue that it is necessary to remedy "the widespread and serious constitutional harm arising from the City's racial gerrymander . . . ." See Motion at 17; see also id. at 7-10. The racial gerrymander they reference here and throughout the Motion is that which likely occurred in connection with the enactment of the 2011 Plan as that is the Plan that was used in the August 2022 School Board election. Id. at 4-6. But, Plaintiffs did not include any challenge to the 2011 Plan or the August 2022 School Board election in the Complaint. Indeed, as

summarized above, Plaintiffs' Complaint was carefully drafted and specifically focused solely on the March 2022 Ordinance and the Enacted Plan, which did not impact the August 2022 School Board election.   Plainly, Plaintiffs cannot obtain final relief "'based on issues not presented in the pleadings . . . .'"   See Dawley v. NF Energy Saving Corp. of Am., 374 F. App'x 921, 923 (11th Cir. 2010) (quoting Cioffe v. Morris, 676 F.2d 539, 541 (11th Cir. 1982)).[7]

The Plaintiffs in this action, like plaintiffs in any civil action, are the masters of their complaint.   See Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC, 714 F.3d 1234, 1237 (11th Cir. 2013).   They are free to choose which claims they wish to bring and which claims they do not.   Here, Plaintiffs filed a Complaint and chose to bring two claims.   In Count One, they asserted that specific portions of the Enacted Plan violated the Equal Protection Clause. And in Count Two, they asserted that the Challenged Districts of the Enacted Plan violated the City Charter.   Given the upcoming August 2022 School Board election which would proceed on the 2011 Plan, Plaintiffs could have pled a

---

[7] While Rule 15(b) allows the Court to conform the pleadings to evidence presented during a trial, Plaintiffs point to no authority allowing such an amendment following a preliminary injunction hearing.   Cf. Rule 15(b).   And there is no argument that Defendants expressly or impliedly consented to such an amendment.   Indeed, Plaintiffs relied on the evidence regarding the 2011 Plan during the preliminary injunction stage solely as relevant to establishing the City Council's intent when enacting the 2022 Enacted Plan.   See Cioffe, 676 F.2d at 542 ("'[T]he introduction of evidence relevant to an issue already in the case may not be used to show consent to trial of a new issue absent a clear indication that the party who introduced the evidence was attempting to raise a new issue.'" (quoting Int'l Harvester Credit Corp. v. East Coast Truck, 547 F.2d 888, 890 (5th Cir. 1977)); see also Preliminary Injunction Order at 104 ("[T]he Court considers the 2011 historical evidence only to the extent it gives rise to inferences regarding the intent of the City Council in 2022.").

third count asserting that the 2011 Plan also violated the Equal Protection Clause. But Plaintiffs opted not to do so. Plaintiffs were aware of some evidence that the 2011 Plan was racially gerrymandered at the time they filed the Complaint and even more so by the time they filed the Injunction Motion. Indeed, in the Injunction Motion, Plaintiffs relied on the historical evidence of the significant role race played in the enactment of the 2011 Plan. See Injunction Motion at 6. Yet, at no point during the pendency of this case did Plaintiffs seek leave to amend the Complaint to add a claim concerning the 2011 Plan or the August 2022 School Board election. Plaintiffs point to no authority supporting their attempt to raise a new claim concerning a different legislative act creating a different map and a different election at this late post-judgment stage in the proceedings. See Merle Wood & Assocs., Inc., 714 F.3d at 1237; Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1297 (11th Cir. 2006).

Plaintiffs insist that they are not raising a new claim and that the special election requested is part of the "adequate" relief demanded in the Complaint. See Reply at 8; see also Complaint at 65. But a simple review of the Complaint belies this assertion. Nowhere in the Complaint is there a suggestion that Plaintiffs were raising any challenge to the 2011 Plan or that the relief they were seeking would impact the August 2022 election. Possibly because they cannot point to any portion of the Complaint that supports their contention,

Plaintiffs repeatedly invoke the Court's broad "equitable power and discretion" to support their request.  See Motion at 1-2; see also Reply at 1, 4-5.   But while the Court has broad and flexible equitable powers to remedy a constitutional violation, those powers are not without limits.  See Haitian Refugee Ctr. v. Smith, 676 F.2d 1023, 1041 (11th Cir. 1982).   As relevant here, the Court "must tailor the scope of injunctive relief to fit the nature and extent of the constitutional violation established."  Id.   Stated another way, "the relief must be no broader than necessary to remedy the constitutional violation."  See Newman v. State of Ala., 683 F.2d 1312, 1319 (11th Cir. 1982).   Here, the only constitutional violation alleged in the Complaint, and preliminarily established for purposes of the Court's Preliminary Injunction Order, was the racial gerrymandering evident in the 2022 Enacted Plan.   See Preliminary Injunction Order at 123; Complaint at 62-63.   Because the Enacted Plan challenged in this lawsuit had no impact on the August 2022 School Board election, the relief Plaintiffs seek in the instant Motion is broader than necessary to remedy the constitutional violation alleged in this case.   Indeed, the relief Plaintiffs seek pertains to a different constitutional violation than the one addressed in the Complaint.   It relates to the likely gerrymander of the 2011 Plan, a legislative act not challenged in this lawsuit.   Because Plaintiffs did not allege any claim concerning the 2011 Plan in the Complaint, the relief Plaintiffs seek in the instant Motion is not available in this lawsuit.

Regardless, even if an order requiring a special election for School Board Districts 4 and 6 could have been appropriate relief upon final resolution of this case, the Court is without authority to grant this relief in the current posture of the case.   Notably, Plaintiffs do not identify what Rule of Civil Procedure or other mechanism allows the Court to grant additional relief at this stage in the proceedings.[8]   The relief Plaintiffs seek—an order requiring the City to hold a special election—is in the nature of a final injunction.   A final, or permanent, injunction is one that is granted "after a final hearing on the merits."   See Permanent Injunction, Black's Law Dictionary (11th ed. 2019).   While Plaintiffs cite numerous cases in the Motion in support of the proposition that courts can order special elections, those cases all involve a final adjudication on the merits, whether by consent, summary judgment, or following trial.   See Smith v. Beasley, 946 F. Supp. 1174, 1176, 1212-13, 1225 (D.S.C. 1996) (issuing findings of fact and conclusions of law following a bench trial and entering judgment accordingly); United States v. Osceola Cnty., Fla., 474 F. Supp. 2d 1254, 1255-56 (M.D. Fla. Dec. 8, 2006) (entering a remedial order following a decision on the merits[9] and ordering a special election based on the defendant's

---

[8] As noted, while the Court granted the parties' request that it retain jurisdiction to adjudicate the instant Motion, this was not a determination of whether any such motion was procedurally proper.

[9] See Osceola Cnty., Fla., 475 F. Supp. 2d 1220, 1221 (M.D. Fla. 2006) (findings of fact and conclusions of law following a bench trial).

proposal); Wright v. Sumter Cnty. Bd. of Elections & Registration, 361 F. Supp. 3d 1296, 1299 (M.D. Ga. 2018) (granting a permanent injunction following a bench trial and resolution of the merits); Covington v. North Carolina, 270 F. Supp. 3d 881, 884 (M.D.N.C. 2017) (addressing the appropriate remedy where the procedural history included a five-day bench trial and a ruling on the merits in the plaintiffs' favor which was affirmed on appeal); League of Women Voters of Mich. v. Benson, 373 F. Supp. 3d 867, 880 (E.D. Mich. 2019) (ruling on the merits and issuing an injunction following a trial on the plaintiffs' claims) vacated sub nom. Chatfield v. League of Women Voters of Mich., 140 S. Ct. 429 (2019); Navajo Nation v. San Juan Cnty., No. 2:12-cv-39, 2017 WL 6547635, at *1-2 (D. Utah Dec. 21, 2017) (determining an appropriate remedy after granting summary judgment[10] in favor of the plaintiffs); Swann v. Adams, 263 F. Supp. 225, 226 (S.D. Fla. 1967) (issuing findings of fact and conclusions of law and entering final judgment).[11]

---

[10] See Navajo Nation, 162 F. Supp. 3d 1162, 1165 (D. Utah 2016) (granting summary judgment in favor of the plaintiffs on the claim concerning the county commission districts) and Navajo Nation, 150 F. Supp. 3d 1253, 1256 (D. Utah 2015) (granting summary judgment in favor of the plaintiffs on the claim concerning school board districts).

[11] Plaintiffs also cite Cosner v. Dalton, 522 F. Supp. 350 (E.D. Va. 1981).  In Cosner, the court does not specifically identify the procedural posture of the case.  Nevertheless, the court's findings appear to be its final determinations on the merits, and there is nothing in the decision to suggest that the court is making only preliminary findings.  See Cosner, 522 F. Supp. at 354, 363-64   In the Reply, Plaintiffs cite James v. City of Sarasota, Fla., 611 F. Supp. 25 (1985).  See Reply at 3 n.2.  In that case, the defendant admitted liability on the eve of trial, the parties proceeded to litigate the appropriate remedy, and the court's decision followed a two-day evidentiary hearing.  See James, 611 F. Supp. at 27.  Plaintiffs also cite numerous cases where a court ordered a special election pursuant to a consent decree.  See

This case, however, did not proceed to a trial on the merits or final resolution at summary judgment.   Instead, the parties entered into a Settlement Agreement following the Court's ruling on Plaintiffs' Injunction Motion in which they sought only preliminary injunctive relief.   See Remedial Order at 4 n.1 (noting the preliminary nature of the Court's findings); see also Order (Doc. 131) (observing that the Court had made only preliminary findings about the factual and legal issues in this lawsuit).[12]   Significantly, "where a federal district court has granted a preliminary injunction, the parties generally will have had the benefit neither of a full opportunity to present their cases nor of a final judicial decision based on the actual merits of the controversy."   See Univ. of Tex. v. Camenisch, 451 U.S. 390, 396 (1981) (emphasis added).   And in the absence of a final determination on the merits, Plaintiffs have not shown any legal basis on which they can obtain the final injunctive relief they now seek.   See id. at 395 ("[I]t is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits."); id. at 394 (explaining that the underlying court had "improperly equate[d] 'likelihood of

---

Reply at 3 n.2.   As there is no consent decree at issue here, the Court finds those cases unhelpful.

   [12] This is not a case where the parties entered a partial settlement as to liability and asked the Court to determine the appropriate remedy.   Indeed, in the Settlement Agreement there is no admission of liability by the City.   See generally Settlement Agreement; see also Ordinance 2023-281-E.

success' with 'success,'" and more importantly "ignore[d] the significant procedural differences between preliminary and permanent injunctions"); see also Newman, 683 F.2d at 1319 ("To be entitled to permanent injunctive relief from a constitutional violation, a plaintiff must first establish the fact of the violation.").[13]

To the extent Plaintiffs contend that the relief they seek is necessary to effectuate the Court's Preliminary Injunction and Remedial Orders, this argument misapprehends the status of those Orders.  See Reply at 6, 8.  By their terms, those Orders expired upon entry of the Final Judgment in this case. See Preliminary Injunction Order at 137; Remedial Order at 58; see also Sec. & Exch. Comm'n v. First Fin. Grp. of Tex., 645 F.2d 429, 433 (5th Cir. Unit A May 1981) ("A preliminary injunction remains in effect until a final judgment is rendered.").[14]  The map in effect at this time is the map enacted by the City Council pursuant to the Settlement Agreement.  See Order (Doc. 131) at 1-2; see also Ordinance 2023-281-E (Doc. 128-2).  As such, the Court can discern no

---

[13] And because Plaintiffs did not seek relief regarding the August 2022 election, the Court has not made even a preliminary determination of whether relief concerning an election that took place in August of 2022 would be appropriate for claims based on a map approved in 2011.

[14] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

mechanism by which it could now order additional injunctive relief to effectuate Orders that are no longer operative.

Moreover, Plaintiffs provide no justification for why they did not seek the relief they now request during the preliminary injunction proceedings. Plaintiffs were aware at that time of the evidence concerning the 2011 Plan and that the August 2022 School Board election would proceed on that Plan.   And Plaintiffs certainly knew that they were seeking an interim remedial plan with significant changes to the City Council and School Board district maps.   Thus, Plaintiffs could have argued at that time that a special election for School Board Districts 4 and 6 also would be necessary to provide full relief and to alleviate confusion from any substantial changes to the district lines.   Yet, Plaintiffs do not identify any point in the record of this case where they suggested that a special School Board election would be necessary to effectuate a complete remedy.   Having chosen not to pursue such relief from the outset, Plaintiffs provide no explanation as to why they should now be permitted to expand the relief they seek so significantly, nor do they point to any applicable legal authority that would permit them to do so.

Plaintiffs in this action filed a lawsuit challenging the Enacted Plan and sought specific relief associated with the constitutional harm that plan would have on Duval County voters.   They achieved success in that the Enacted Plan was not and will not be used in any election.   But Plaintiffs did not challenge

the 2011 Plan or seek any relief related to the harm to voters that could result from the use of that plan in the August 2022 election.  The Court recognizes Plaintiffs' concern for the plight of the impacted voters, but their attempt to seek relief for those voters in this action and particularly at this stage of the proceeding is improper.  This is so not only because Plaintiffs raised no challenge to the 2011 Plan or the August 2022 School Board election in this action, but also because Plaintiffs obtained only a preliminary finding of likelihood of success, not a final determination of liability, and because the Court's Preliminary Injunction Order and Remedial Order expired upon entry of the Final Judgment.   As such, the Motion will be denied.

Accordingly, it is

**ORDERED:**

Plaintiffs' Motion to Order Special Elections for Duval County School Board Districts 4 and 6 (Doc. 134) is **DENIED.**

**DONE AND ORDERED** in Jacksonville, Florida this 1st day of March, 2024.

**MARCIA MORALES HOWARD**
United States District Judge

lc11
Copies to:

Counsel of Record